[No. 3635-1.    Division One.    March 15, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. JANICE WEAR ROBBINS, *Appellant*.

*Mullen & Angevine* and *Earl F. Angevine,* for appellant.

*Patrick R. McMullen, Prosecuting Attorney,* and *William H. Nielsen, Larry E. Moller,* and *Dennis J. DeFelice, Deputies,* for respondent.

FARRIS, J.—Janice Wear Robbins was charged with and convicted of violating the Uniform Controlled Substances Act. She appeals.

On October 17, 1974, Robbins presented a prescription for Percodan to a pharmacist who advised her that it had been forged. She then left the store. The pharmacist turned the prescription over to the police and Robbins was arrested on Friday, October 18, 1974. She was fully advised of her *Miranda* rights both at the time of her arrest and later at the police station where she was taken to be photographed. While she was at the police station, she signed a form acknowledging and waiving her *Miranda* rights but refused to make a statement. She was then taken to the county jail where she remained throughout the weekend. On Monday, October 21, she was brought back to the police station prior to being taken before a district court judge for arraignment. She was again advised of her rights and she again signed an acknowledgment and waiver form. After being interrogated by a police officer, she wrote and signed a statement describing her role in regard to the forged prescription and made certain oral statements. She was subsequently charged with uttering a forged prescription for a controlled substance in violation of RCW 69.50.403(a)(5). Her written and oral statements were admitted into evidence at the trial; the jury returned a verdict of guilty as charged.

Error is assigned to the court's finding at the CrR 3.5 hearing that she voluntarily, knowingly, and intelligently waived her *Miranda* rights prior to making the statements. Robbins argues that the written waiver which she signed on October 21 is invalid and the statements were therefore

inadmissible because the waiver was obtained: (1) after she had previously indicated that she did not wish to make a statement, (2) after she had been incarcerated for over 2 days, and (3) as the result of cajolery.

Robbins' argument on the first point is based upon the following language from *Miranda*:

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.

(Footnote omitted.) *Miranda v. Arizona*, 384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The Supreme Court has recently considered this passage and held that it cannot

> sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent.

(Footnote omitted.) *Michigan v. Mosley*, 423 U.S. 96, 102, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975). We do not ignore the factual differences between *Mosley* and the instant case: there the questioning was done by two different law enforcement officers whereas here the same officer was involved in each attempt at interrogation, there the questioning occurred on the same day whereas here it occurred on a Friday and the following Monday, and there the questioning dealt with two separate crimes whereas here the questioning dealt with the same crime. We find that these factual distinctions are not determinative. The *Mosley* court held that

> the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored."

(Footnote omitted.) *Michigan v. Mosley, supra* at 104. The Friday questioning session was immediately halted when Robbins indicated that she did not wish to make a statement. On Monday, she was again advised of her rights before questioning began. Nothing in the record even suggests that the questioning sessions held on Friday and Mon-

day constituted a situation in which Robbins was denied her right to remain silent because the police refused to take "no" for an answer. We find no error in the procedure used. *See Michigan v. Mosley, supra.*

Robbins' argument that the waiver is invalid because it was obtained after she had been incarcerated for over 2 days is based upon the following language from *Miranda*:

> Whatever the testimony of the authorities as to waiver of rights by an accused, the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights.

*Miranda v. Arizona, supra* at 476. We reject the argument. The record reveals no evidence that Robbins was held incommunicado or coerced in any other manner during her weekend stay at the county jail.

Robbins also argues that she was cajoled into waiving her rights as a result of being told by the interrogating officer that: (1) if she cooperated she would not do over 30 to 60 days in the county jail, (2) the police had proof that a male friend of hers had actually forged the prescription and they were merely waiting for a warrant to pick up the friend, and (3) he would check the statement with her attorney and if it was not all right, she could tear it up. While Robbins so testified at the CrR 3.5 hearing, the record reflects that the interrogating officer denied each of these allegations. Robbins recognizes that the court resolved the factual dispute by believing the officer and rejecting her assertions. However, she contends that where, as here, an individual is interrogated by a police officer under circumstances where independent corroborating evidence such as audio or video tapes could easily have been obtained, the failure to obtain and produce such evidence requires that the waiver of rights be declared invalid. She relies upon *State v. Davis*, 73 Wn.2d 271, 288, 438 P.2d 185 (1968):

> Considering the facts as presented in the case at bar, we cannot hold that the prosecution has met the burden

of proving the validity of Belknap's alleged waiver as required by the holding in *Miranda*: (1) the admission was made while the defendant was in police custody within the confines of the police station; (2) presumably the police had both the opportunity and the means readily available to establish substantial corroborating evidence; (3) the only evidence presented by the prosecution consisted of the testimony of one interrogating officer; (4) the officer's testimony was neither corroborated by other testimony nor supported by other independent evidence; (5) the officer's testimony was completely contradicted by the defendant; and (6) a second officer, who was the only other person present during the interrogation, was not called as a corroborating witness by the prosecution nor was his absence explained, and in the instant case this last element may be deemed determinative.

She misreads the holding. There, a second officer was present and witnessed the procedure. *Davis* does not *require* that there be corroborating evidence. It merely requires that corroborative evidence be introduced when available under specified circumstances. Here, there was no corroborating evidence available. The court could therefore properly resolve the issue on the testimony presented.

Error is next assigned to the refusal of the trial court to grant Robbins' motion to dismiss. The motion was made on the ground that the State had failed to establish that Robbins "did willfully, unlawfully and feloniously then and there utter a false or forged prescription for a controlled substance, . . ." as charged in the information. It is argued that Robbins' acts were "patently equivocal" within the meaning of *State v. Davis, supra* at 289 and *State v. Fitzpatrick*, 5 Wn. App. 661, 667, 491 P.2d 262 (1971), and therefore insufficient to establish the requisite criminal intent. The rule regarding patently equivocal acts is:

> [W]here a defendant's acts are patently equivocal, criminal intent may not be inferred from the overt acts alone; however, specific criminal intent may be inferred from the conduct where it is plainly indicated as a matter of logical probability.

*State v. Davis, supra* at 289. Even assuming, without deciding, that the act of presenting a forged prescription is patently equivocal, the jury was presented with evidence from which it could have inferred intent. The pharmacist testified that Robbins (1) told him that the prescription was for her female roommate, (2) provided him with an address, and (3) did not appear extremely surprised when he informed her that the prescription was a forgery. The record contains evidence from which the jury could have found that neither Robbins nor the person named in the prescription lived at the address which she gave to the pharmacist and that she had no female roommate.

■ Error is further assigned to the trial court's action of permitting the State, over objection, to amend the information to add the words "knowingly or intentionally" to the original phrase of "willfully, unlawfully and feloniously." While "knowingly or intentionally" is the precise phrase used in RCW 69.50.403(a)(5) under which Robbins was charged, the exact words of the statute need not be used in an information. An information is sufficient "when the facts constituting the crime are so stated that a man of common understanding can determine therefrom the offense with which he is charged." *State v. Bates*, 52 Wn.2d 207, 211, 324 P.2d 810 (1958). The term "willfully" in the information was equivalent to "knowingly or intentionally." *State v. Bixby*, 27 Wn.2d 144, 160, 177 P.2d 689 (1947); *Tacoma v. Lewis*, 9 Wn. App. 421, 425, 513 P.2d 85 (1973). We therefore find no error in the procedure employed. *See* CrR 2.1(d).

Error is next assigned to the refusal of the trial court to give the instruction on admissions and confessions which Robbins proposed and to the instruction given. The instruction given was approved in *State v. Donaldson*, 76 Wn.2d 513, 520, 458 P.2d 21 (1969) and is an accurate statement of the law.

■ Error is also assigned to the refusal of the trial court to give a proposed instruction which set forth the "missing witness" rule. It is argued that the male friend

who allegedly gave Robbins the forged prescription should have been called to testify regarding Robbins' knowledge of the forgery and that the State's failure to do so justified the instruction. We disagree. The record does not reflect that the male friend had such a community of interest with the State, or that the State had such a superior opportunity to know his testimony, that he probably would have been called but for the damaging nature of his testimony. *See State v. Davis, supra* at 276-77.

It is argued that the prosecutor was guilty of misconduct in questioning Robbins at the trial regarding other instances of uttering forged prescriptions in light of certain representations made at the CrR 4.7 omnibus hearing. We find no merit in the argument. According to Robbins, the prosecutor indicated at the omnibus hearing that he did not intend to use any of her prior acts at trial except for the purpose of cross-examination or impeachment. That was precisely the use to which the prior acts were put.

■ Robbins also argues that the trial court erred in failing to advise her of her Fifth Amendment right to refuse to answer the questions which were asked about her prior acts. We disagree. By voluntarily taking the witness stand, a defendant waives the Fifth Amendment right against self-incrimination as to all matters which are properly part of cross-examination. *State v. Robideau,* 70 Wn.2d 994, 1001, 425 P.2d 880 (1967). Here, the question regarding Robbins' prior acts went to impeaching her direct testimony and her credibility. *See State v. Donaldson, supra* at 517.

Affirmed.

WILLIAMS, C.J., and ANDERSEN, J., concur.

Petition for rehearing denied June 30, 1976.

Review denied by Supreme Court November 23, 1976.