[No. 6363-1.   Division One.   July 9, 1979.]

THE STATE OF WASHINGTON, *Appellant,* v. ROBERT
THOMAS PIERCE, *Respondent.*

RINGOLD, J., dissents by separate opinion.

*Russ Juckett, Prosecuting Attorney,* and *Kathryn E. Trumbull, Deputy,* for appellant.

*Steven Ashlock* of *Snohomish County Public Defender Association,* for respondent.

DORE, J.—The State appeals a pretrial order which suppressed defendant's confession. We reverse.

## ISSUE

Whether an accused person in custody, having once invoked the right to counsel, can thereafter constitutionally waive that right.

## FACTS

Around noon on May 27, 1977, following the robbery of a Renton jewelry store, defendant was arrested, frisked and orally advised of his constitutional rights. Defendant refused to answer any questions and stated he wanted to talk to "a lawyer" or "his lawyer."

Defendant was then transported to the Renton police station at about 12:10 p.m. The Renton police station is equipped with a booking facility and a jail. During the booking process, which took approximately 1 hour, defendant refused to state his name, address or date of birth and was booked as "John Doe." Subsequently defendant was permitted to place a telephone call to a lawyer. The defendant telephoned a friend instructing him to obtain a lawyer for him. The defendant was then placed in a cell at the jail for several hours and then brought to an interrogation room for questioning.

A Detective File and his partner were in the interrogation room when defendant was brought in. The defendant was again read his rights and thereafter defendant signed a waiver of rights form and made statements concerning the

crime committed in Renton. Upon further questioning, defendant made an oral confession to the robbery of the Cascade Valley Hospital. (On May 3, 1977, the Cascade Valley Hospital had been robbed of a quantity of drugs by a masked person who escaped.) Detective File knew of the robbery of the hospital, but had been unaware of defendant's involvement.

On June 1, 1977, upon information from the Renton police, Officer Cull of the Snohomish County Sheriff's Office and another officer appearing in plain clothes, came to the jail in Renton for the purpose of questioning defendant concerning the Cascade Valley Hospital robbery. Defendant was again advised of his rights and he signed the appropriate acknowledgment of rights and waiver form. Thereafter, a written statement was obtained from defendant admitting his involvement in the Cascade Valley Hospital robbery. Defendant was subsequently charged with such robbery.

Following a hearing held pursuant to CrR 3.5 to suppress defendant's confession, the court entered the following findings as to undisputed facts:

Finding of fact No. 2:

At the time of apprehension on May 27, 1977, the defendant refused to answer any questions and indicated that he wanted to talk to "a lawyer" or "his lawyer". Detective Nibarger delivered defendant to the Renton Police Station, where there is a booking facility and a jail, about 12:10 on that date. The booking process took about an hour, during which time the defendant refused to state his name or address or date of birth, among other things.

He did place a telephone call to a friend, with a request to obtain a lawyer.

Finding of fact No. 3:

The defendant was placed in a cell at the Renton Jail for two or three hours and then brought in to the interrogation room for questioning by Detective File and his partner. Detective File read him his rights form—or his partner did, and he signed the rights form, which is Exhibit 3, and then, subsequently, after questioning,

made a statement concerning the crime committed in Renton.

Finding of fact No. 4:

After the taking of the above–mentioned statement, Detective File further questioned the defendant in general terms concerning his activities in the State of Washington, it being determined, apparently, that defendant was originally from California. The purpose of the questioning was to ascertain what his activities in this State, particularly King County, had been, and with the view in mind of clearing up any other criminal activity or cases that they might uncover from that conversation; and at least one such criminal case that was uncovered was the robbery of the pharmacy at Cascade Valley Hospital, in Snohomish County, of which Detective File had previously been aware, but he was not aware of anything concerning the defendant's involvement. The defendant did make an oral confession of perpetrating that offense. The Snohomish County Sheriff's Office was so advised; prior to said advisement, Snohomish County authorities had no information implicating defendant herein in the Cascade Valley Hospital Robbery.

Finding of fact No. 5:

On the thirty–first day of May, 1977, defendant was brought before Judge "Matson" at the District Court of Renton for arraignment on the charge of robbery in Renton. At that time, the defendant moved to be permitted to represent himself, and that motion was denied. The record is not clear as to whether the lawyer was appointed for him on that occasion.

Finding of fact No. 6:

The record is silent as to whether any officer ever made any attempt to ascertain whether or not defendant had in fact been able to contact an attorney.

From these findings, the court concluded:

That the defendant knowingly and voluntarily waived counsel in talking to Detective File (Renton Police Department) and Detective Cull (Snohomish County Sheriff's Office); but the surrounding circumstances, particularly the time elapsing between the defendant's refusal to talk without an attorney while being frisked at

the scene of the crime and his statement to Detective File, (about four (4) hours), are not sufficiently strong in favor of the State for this court to rule in direct opposition to the rulings of the Court of Appeals, Division Two, as discussed in the Court's Memorandum Decision. Therefore, the statement of defendant of June 1, 1977 is found inadmissible and is suppressed.

Conclusion of law No. 1.

The trial court's ruling was based on a reading of *State v. Boggs*, 16 Wn. App. 682, 559 P.2d 11 (1977), and *State v. Haynes*, 16 Wn. App. 778, 559 P.2d 583 (1977), which the court interpreted as establishing a per se rule prohibiting a defendant, following an assertion of the right to counsel, from subsequently waiving that right. Under such a rule, any and all police interrogation following an assertion of the right to counsel would be prohibited. Thereafter the State moved for dismissal alleging that the practical effect of the suppression of the confession was to terminate the case. The State's motion was granted and this appeal followed.

ISSUE 1: No per se rule exists to prohibit a defendant from constitutionally waiving his prior asserted right to counsel.

■ A per se rule prohibiting a suspect in a criminal investigation from waiving his right to counsel after having initially made known his desire to have the assistance of counsel is neither necessary nor appropriate; *Miranda* requirements must be applied with flexibility and realism. *United States v. Rodriguez–Gastelum*, 569 F.2d 482 (9th Cir.), *cert. denied*, 436 U.S. 919 (1978); *cf. North Carolina v. Butler*, 441 U.S. 369, 60 L. Ed. 2d 286, 99 S. Ct. 1755 (1979).[1]

In *North Carolina v. Butler, supra* at 370, the United States Supreme Court rejected the North Carolina Supreme Court's per se rule "that *Miranda v. Arizona*, 384

---

[1]The rationale of *North Carolina v. Butler, supra*, was not available to the trial court at the time of its ruling.

U.S. 436, requires that no statement of a person under custodial interrogation may be admitted in evidence against him unless, at the time the statement was made, he explicitly waived the right to the presence of a lawyer." We hold that an accused, after asserting a right to counsel, can subsequently waive that right if he chooses, and if he voluntarily does so.

In *North Carolina v. Butler, supra* it was stated at pages 374–75:

> Even when a right so fundamental as that to counsel at trial is involved, the question of waiver must be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

(Citations omitted.)

■■ Under the heading "Conclusion of Law," the trial court made a factual statement "that defendant knowingly and voluntarily waived his right to counsel." A statement of fact included within a trial court's conclusions of law will be treated as a finding of fact by the reviewing court. *Redmond v. Kezner,* 10 Wn. App. 332, 517 P.2d 625 (1973). A finding of fact supported by substantial evidence will not be overturned on appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Defendant's testimony illustrates that he was extremely knowledgeable in the booking process and his rights, including the right to obtain an attorney.

Q You've been advised of your rights many times, haven't you?
A Yes, I have.
Q Approximately how many times?
A I have no idea.
Q Ten, twenty?
A Possibly.
Q And basically you understand those rights?
A Yes.
Q And at the time you were booked into the Renton Police Department, you didn't give them any information; isn't that correct? You, in fact, were booked as John Doe?

Q And so you exercised those rights, and even though you claim they did continue to question you, you didn't give them any answers; is that right?

A That's correct. Up until booking, you're talking about.

Q I'm talking about during the booking process, yes, or through that.

A Yes.

. . .

Q Did you attempt to contact an attorney?

A Yes, I asked my friend, that I called, to contact, keep calling until they got an attorney for me, because I knew I would only get one phone call.

. . .

Q All right. Had you been represented by a lawyer in a criminal case previously?

A Oh, yes.

Q Had any of these attorneys been public defenders or lawyers furnished to you by the—A Yes, they had.

Q —State?

A Some of them, uh–huh.

■ Also, the fact that defendant signed an express waiver of rights form "is usually strong proof of the validity of that waiver" even though such was neither "necessary or sufficient to establish waiver." *North Carolina v. Butler, supra* at 373.

We conclude that there was substantial evidence to support the trial court's finding "that defendant knowingly and voluntarily waived his right to counsel." We hold that defendant had a constitutional right to waive his right to counsel, which he did.

Reverse and remand for trial.

WILLIAMS, J., concurs.

RINGOLD, J. (dissenting)—Whether we consider the trial court's conclusion of law No. 1 a finding of fact or a conclusion of law, it does not lend support to the majority's opinion. To reverse the trial court we must be able to say that the trial judge found that the State sustained its burden of proving by a preponderance of the evidence that the

defendant knowingly, voluntarily and intelligently waived his *Miranda* rights,[2] including the right to counsel. *State v. Gross,* 23 Wn. App. 319, 597 P.2d 894 (1979). The difficulties, as I view them with the majority opinion, are threefold: (1) it misconstrues the legal basis upon which the trial court suppressed the evidence; (2) it then takes out of context a statement, *viz.,* "that the defendant knowingly and voluntarily waived counsel . . ." and then attempts to justify a desired result; and (3) based as it is on an inference, the outcome derives from a usurpation of the function of the trier of fact on the basis of a record inadequate for such a deduction.

Neither *State v. Boggs,* 16 Wn. App. 682, 559 P.2d 11 (1977) nor *State v. Haynes,* 16 Wn. App. 778, 559 P.2d 583 (1977) imposes a "per se" rule prohibiting a defendant from constitutionally waiving his previously asserted right to counsel. Both cases recognize that despite a prior request for an attorney a defendant can voluntarily waive the right to counsel. The rule announced in *Boggs* is: "[O]nce an attorney is requested, questioning must desist until the individual has received the assistance of counsel, *unless of course he chooses to voluntarily waive his prior demand for an attorney.*" (Italics mine.) *State v. Boggs, supra* at 688. When we consider the precise holdings in *Boggs* and *Haynes,* the trial court's conclusion of law No. 1 is read as a correct application by the trial court of a "totality of circumstances test."

The majority seizes on the out–of–context sentence and canvasses the testimony in the record to support its inference that a waiver was made. CR 3.5 imposes upon the trial court the burden of making a record that will clearly apprise the appellate court of the basis of the trial court's ruling. Findings of fact and conclusions of law made by the trial court here and the trial court's oral decision and memorandum decision fail to resolve the seeming conflict

---

[2]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

between the opening sentence and the balance of the conclusion.

The question is not whether there is a "per se" rule prohibiting a defendant from constitutionally waiving his prior asserted rights, but the issue remains whether from the particular facts and circumstances surrounding this case, including the background experience and conduct of the accused, the State proved by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his right to counsel. I cannot find the trial court's answer from the record before us.

I would remand this case to the trial court for an express finding whether the State has sustained the burden of proving that the defendant voluntarily waived his right to counsel after requesting an attorney.

As an appellate court we cannot weigh the evidence or try the facts. *In re Sego,* 82 Wn.2d 736, 739–40, 513 P.2d 831 (1973). The so frequent appearance of this admonition, like Jeremiah's remonstrances, in appellate opinions underscores not only the frequency of its breach, but also the importance of its observance.

I respectfully dissent.

Reconsideration denied August 16, 1979.

Appealed to Supreme Court December 20, 1979.