[No. 6517–3–I.   Division One.   March 3, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS
H. VANNOY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent*, v. RONALD
GENE WILLIAMS, *Appellant.*

THE STATE OF WASHINGTON, *Respondent*, v. DAVID
ARLYN VANNOY, *Appellant.*

*Sarah Lytle* of *Seattle–King County Public Defender Association, Christopher J. Fox, Fox & Adams,* and *David C. Nordeen,* for appellants (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Gordon Jones, Deputy,* for respondents.

DORE, J.—Defendants David Vannoy and Ronald Williams appeal the denial of their motions to suppress written confessions. Defendant Thomas Vannoy appeals the trial court's refusal to grant him a separate trial.

ISSUES

1. Whether the confessions of David Vannoy and Ronald Williams were "voluntarily" given and satisfied the requirements of constitutional due process.

2. Whether the reinterrogation of defendants David Vannoy and Ronald Williams, which resulted in signed confessions, violated their constitutional rights under the Fifth and Sixth Amendments.

3. Whether the trial court erred by refusing to grant defendant Thomas Vannoy's motion for a separate trial.

## FACTS

On February 21, 1978, at approximately 1:45 a.m., following a high speed chase, defendants David Vannoy, Ronald Williams, and Thomas Vannoy were arrested in connection with a service station robbery. A fourth companion, John Clark, was shot and killed by the station attendant during the course of the robbery. Thomas Vannoy was the driver of the automobile.

All three defendants were advised of their constitutional rights. However, at that time no questioning occurred. Defendant David Vannoy stated he would make no statement without an attorney. Defendant Williams also refused to answer any questions.

At about 5 a.m., Detective Reed met David Vannoy in his office and readvised him of his constitutional rights. Vannoy stated he understood each right and signed an explanation of rights form. Vannoy then signed a waiver of rights form. Subsequently at about 6:13 a.m., David Vannoy signed a written confession.

At about 6:55 a.m., Reed contacted defendant Williams and repeated the procedure he used with David Vannoy. Shortly thereafter Williams signed a written confession.

The trial court denied defendants Williams' and David Vannoy's motions to suppress their confessions pursuant to CrR 3.5. At the same hearing defendant Thomas Vannoy moved to separate his trial from the trial of the other codefendants. The court denied Thomas Vannoy's motion on the condition that specific references in the confessions to Thomas Vannoy be deleted.

Defendants Williams and David Vannoy were convicted of robbery in the second degree; Thomas Vannoy was convicted of rendering criminal assistance in the second degree.

DISCUSSION

ISSUE 1: The law enforcement procedure used to obtain written confessions did not violate requirements of due process.

In order for a defendant's confession to be admitted into evidence, it must pass two tests of voluntariness. The first test is the due process test of voluntariness. The second concerns the voluntary waiver of *Miranda* rights, which will be discussed shortly.

■ Under due process considerations, a defendant's confession must be voluntary in order to be admitted into evidence. The test of voluntariness for due process purposes is "'whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth.'" *State v. Braun,* 82 Wn.2d 157, 161–62, 509 P.2d 742 (1973).

Defendants argue that their will to resist was overcome by the mental and physical coercion of the law enforcement officers. We disagree.

■ A trial court's determination that a confession was voluntary will be binding on an appellate court when there is substantial evidence in the record from which the trial court could find a preponderance of evidence to establish voluntariness. *State v. Snook,* 18 Wn. App. 339, 567 P.2d 687 (1977).

Defendant David Vannoy argues that the record reveals the following facts which prove his confession was coerced. He was in a state of shock resulting from a high speed chase and the death of his friend; he was sleepy; he is young and inexperienced. However, a clear reading of the record in the subject case indicates that the confession was voluntary. Vannoy testified that he knew he had the right

to counsel and that he did not have to make a statement without counsel present. Detective Reed testified that Vannoy was in good mental and physical shape and that he was thinking clearly enough to give a rational and detailed description of the attempted robbery.

Defendant Williams also argues that coercive police conduct overcame his will to resist and bases his argument on the following facts. He was tired and sleepy, in shock, and was intoxicated. The record does not support such contentions. In fact, Williams himself testified that at the time of the questioning he was alert and sober. Williams also testified that he knew what it meant to remain silent and that he had the right to counsel.

We hold that there is substantial evidence in the record indicating that the defendants' confessions were voluntarily made in accordance with the standards of due process.

ISSUE 2: The reinterrogation of defendants did not violate their constitutional rights under *Miranda*.

Defendant Williams argues that under law set forth in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), it was not permissible for the State to renew its interrogation after he had exercised his right to remain silent.

This issue revolves around the second test of voluntariness derived from the *Miranda* decision. *Miranda* held that:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise the Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in–custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

*Miranda v. Arizona, supra* at 473–74.

■ This test is a separate one from the due process test of voluntariness because the issue here is not whether the confession was voluntary, but rather whether an accused who has been informed of his rights thereafter knowingly and intelligently waived those rights before making a statement. *State v. Davis,* 73 Wn.2d 271, 284, 438 P.2d 185 (1968).

It is now the well settled law that a defendant can waive his right to remain silent during reinterrogation. The Supreme Court in *Michigan v. Mosley,* 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975) stated that under some circumstances, the police will be allowed to reinterrogate a defendant to determine if he changed his mind about making a statement. The court thereafter held that *Miranda* is not a per se proscription upon any subsequent questioning, but that:

> [T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored."

*State v. Robbins,* 15 Wn. App. 108, 110, 547 P.2d 288 (1976).

In the subject case the initial questioning of Williams was promptly halted when he said he did not want to make a statement. Approximately 4 hours later Detective Reed readvised Williams of his right to remain silent. A short time later, Williams waived his rights and signed a written confession. There is nothing in the record to indicate that the object of the second interrogation was to wear down the defendant and force him to change his mind. Thus, defendant Williams' *Miranda* rights were "scrupulously honored" and we find no error in the procedure used by the law enforcement officers.

Defendant David Vannoy also argues that the reinterrogation violated his *Miranda* rights, but grounds his assignment of error on his Sixth Amendment right to counsel, rather than his Fifth Amendment right to remain silent.

■ The applicable law, which has been construed by numerous courts, was set forth in *Miranda v. Arizona, supra,* at pages 474–75:

If the individual [in custody] states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

. . .

If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self–incrimination and his right to retained or appointed counsel.

This court recently held that *Miranda* does not require a per se rule prohibiting a defendant from waiving his right to counsel after initially requesting the assistance of counsel. Therefore, a defendant may, after asserting his right to counsel, waive that right if he does so knowingly and intelligently. *State v. Pierce,* 23 Wn. App. 664, 597 P.2d 1383 (1979); *North Carolina v. Butler,* 441 U.S. 369, 60 L. Ed. 2d 286, 99 S. Ct. 1755 (1979).

■ In the subject case, defendant David Vannoy signed a waiver of rights form. The court in *North Carolina v. Butler, supra,* held that this alone "is strong proof of the validity of the waiver" even though such was neither "necessary or sufficient to establish waiver." *State v. Pierce, supra.*

In addition, the following testimony was elicited from defendant David Vannoy during trial:

Q Did they advise you of your rights at that point?
A Yes.
Q Do you remember signing the rights form?
A Yes.
Q Do you remember signing the waiver of constitutional rights?

A Yes.

. . .

Q You knew at the time that you were advised of your rights in the criminal investigation room that you had a right to an attorney, correct?

A Correct.

Q And by initialing Right No. 3 here on Plaintiff's Exhibit No. 7 you indicated that right was read to you, correct?

A Correct.

Q That is your signature at the bottom of the "Explanation of my Constitutional Rights?"

A Yes, it is.

Q And under "Waiver of Rights," that is your signature also?

A Yes, it is.

. . .

Q At the time you gave this statement—now, you stated previously you knew you had the right to an attorney, correct?

A Correct.

Q And you knew that you didn't have to give a statement without an attorney being present?

A Right.

Q But you signed this statement anyway, correct?

A Yes.

The record in the subject case clearly shows that there was substantial evidence on which the trial court could base a holding that David Vannoy knew of his right to counsel and intentionally and intelligently waived that right.

ISSUE 3: Trial court committed reversible error when it refused to grant defendant Thomas Vannoy's motion for a separate trial.

Defendant Thomas Vannoy argues that his case should have been severed from the other defendants because he was prejudiced when their confessions were read to the jury.

Defendant relies on the "*Bruton*" rule for this assignment of error. In *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), the Supreme Court held that the confession of a codefendant who did not take

the stand may not be used against the defendant because to do so would deny him his civil rights under the confrontation clause of the sixth amendment to the United States Constitution. *State v. Herd,* 14 Wn. App. 959, 546 P.2d 1222 (1976); *State v. Ferguson,* 3 Wn. App. 898, 479 P.2d 114 (1970).

■ To avoid the problems encountered in *Bruton,* our Supreme Court adopted CrR 4.4 which states:

**(c) Severance of Defendants.**

(1) A defendant's motion for severance on the ground that an out–of–court statement of a codefendant referring to him is inadmissible against him shall be granted unless:

(i) The prosecuting attorney elects not to offer the statement in the case in chief.

(ii) Deletion of all references to the moving defendant will eliminate any prejudice to him from the admission of the statement.

The criminal rules do not grant the trial court any discretion in this area. The trial court was absolutely obligated to grant separate trials unless one of the two conditions was met.

In the present case Thomas Vannoy timely moved for a separate trial on the ground that the confessions of the codefendants implicated him. The trial court denied the motion on the condition that specific references in the confessions to Thomas Vannoy be deleted. At trial, the modified confessions were read to the jury and Thomas Vannoy was convicted of rendering criminal assistance in the second degree. RCW 9A.76.080. An essential element of this crime is whether the defendant had knowledge that a crime had been committed.

It is clear from *Ferguson* and *Herd* that separate trials should only be required in criminal cases where an out–of–court statement by a codefendant, expressly or by direct inference, incriminates the fellow defendant. Only then does the inability to cross–examine the codefendant become constitutionally prohibited.

The issues this court must address are whether the deleted confessions expressly or by direct inference, implicated Thomas Vannoy and if so, whether he was prejudiced thereby.

The deleted statements described a drive to the service station during which the robbery was planned. The confessions stated that the defendants ran to "the car," got in, and a chase with the police ensued. If defendant Thomas Vannoy is identified as one of the "we" in the getaway car, he obviously had knowledge of the plan and execution of the attempted robbery.

The confession of defendant, Ronald G. Williams, is replete with "we's," describing the planning and commission of the robbery. For example

> *We* then decided that *we* would go out and drive around until *we* could find some place to hit and get some money. . . . *We* drove by the Standard station and saw that there was only one guy there, so *we* decided this was the place to rob . . . *We* pulled around the corner and parked the car about 100 feet from the station . . . *We* walked to the station. When *we* got to the station, John pointed the gun at the guy and told him it was a holdup.

David Vannoy's confession contained the following "we's."

> When *we* got to the Standard station John said "Pull over here." I don't know which street *we* were on. *We* got out of the car. *We* walked over to the entrance of the station. John entered the station first. John pulled out the gun. He lifted it out of his pants and said "See this, you know what it means?" The attendant said yes.

The issue simply is whether the "we" used in both confessions implicated Thomas Vannoy.

Officers Ash and Mortenson both testified that they observed the getaway car at the scene of the crime parked alongside the gas station that had been robbed and that three white men ran to the car, jumped in and then drove away at top speed with the patrol car in pursuit. The officers related that they had the getaway car under continuous surveillance as they pursued such vehicle at high speeds

through the city, which ultimately ended in stopping the vehicle and arresting the occupants.[1] Thomas Vannoy was arrested as the driver of the vehicle. One statement in David Vannoy's confession directly refers to Thomas Vannoy. It was "We drove around, I don't know which streets, we drove for about ten minutes and then were arrested by the police." This statement obviously refers to the three remaining defendants, David Vannoy, Thomas Vannoy and Ronald Williams, because the three were observed by the police getting into the car, during the chase, and at the time the car was stopped and they were arrested. The other participant, John Clark, had been killed and was not one of the three men in the car. The statements of Ronald Williams and David Vannoy clearly referred to David and Thomas Vannoy and Ronald Williams, and not John Clark, David Vannoy and Ronald Williams.

We conclude that a jury, after hearing the deleted confessions and facts of the case, could readily conclude that defendant Thomas Vannoy was included in the "we's" of the codefendants' statements.

The next issue is whether the identification of Thomas Vannoy in the deleted statements constituted prejudicial error.

■ In *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967), the Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief

---

[1] A [Ash] We were southbound on Rainier and turned eastbound on South McClellan . . . There were three white males getting into the car at that time . . .

. . .

A The driver's door was open. The driver was mostly in the car, almost seated. The passenger, which later sat in the front seat, was standing besides the car door, outside of the car. And there was one other white male in the process of getting into the back seat.

. . .

A [Mortenson] . . . The vehicle was facing in an easterly direction. And I observed one white male getting into the vehicle on the passenger side. And there were two other occupants in the vehicle at the time.

that it was harmless beyond a reasonable doubt." 386 U.S. at 24.

The fact that a chase occurred, by itself, was not such overwhelming evidence against Thomas Vannoy that the introduction of the statements can be deemed harmless. Without the codefendant's statements, the jury might have had a reasonable doubt as to whether Thomas Vannoy *knew* a crime had been committed. There are other possible explanations for a chase, including simply unspecified fear on the part of the passengers with a demand to the driver to "take off." Where the other evidence relating to Thomas Vannoy's knowledge that a crime had been committed was open to doubt, the inadmissible out–of–court statements of David Vannoy and Ronald Williams were much too damaging and prejudicial to be deemed harmless beyond a reasonable doubt.

Reversed and remanded for new trial on the charge of rendering criminal assistance in the second degree.

RINGOLD, J., concurs.

WILLIAMS, J. (dissenting)—I dissent from that part of the majority opinion reversing the conviction of Thomas Vannoy. The excised confessions of Williams and David Vannoy relate how they, with one John Clark, planned and carried out the robbery of the service station. The station operator described the events of the robbery in almost precisely the same detail. Thomas Vannoy was in no way mentioned or included in the confessions or in the operator's testimony. He was connected with the crime by two police officers who drove by just as he was getting into the driver's seat of the getaway car containing David Vannoy and Williams. (Clark was killed during the robbery.) Thomas Vannoy drove the car away at excessive speeds the wrong way up a one–way street, nonstop through two stop signs and across several uncontrolled intersections.

Thomas Vannoy argues that the use of "we" several times in the confessions and the statements by each

476

defendant referring to conversations in and flight to "the" car implicate him. I do not so read the confessions. The antecedents of the "we" were Williams, David Vannoy, and Clark, not Thomas Vannoy. The inclusion of the word "the" does not identify Thomas Vannoy. No direct inference reasonably can be drawn from the references to the car that Thomas Vannoy or anyone was waiting in it. Nor does the language imply guilty knowledge on Thomas' part. As was said in *State v. Ferguson*, 3 Wn. App. 898, 906, 479 P.2d 114 (1970):

> Separate trials should be required only in those instances in which an out–of–court statement by a codefendant expressly or by direct inference from the statement incriminates his fellow defendant. Only then does the inability to cross–examine the codefendant become constitutionally prohibited.

(Citation omitted.) The judgment of conviction of Thomas Vannoy should be affirmed.

Reconsideration denied March 25, 1980.

Remanded by Supreme Court to Court of Appeals.