[No. 46704.   En Banc.   September 25, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT
THOMAS PIERCE, *Appellant.*

*Steven Ashlock* of *Snohomish County Public Defender
Association,* for appellant.

*Russ Juckett, Prosecuting Attorney,* and *Kathryn E. Trumbull* and *James B. Roche, Deputies,* for respondent.

BRACHTENBACH, J.—This case involves suppression of a defendant's written confession of a crime committed in Snohomish County. The trial court, after a CrR 3.5 hearing, suppressed that confession. Upon the State's motion the court granted a dismissal on the ground that the suppression order effectively terminated the State's case. The State appealed pursuant to RAP 2.2(b)(2); the Court of Appeals reversed and remanded for trial; Judge Ringold dissented on the basis that it was necessary to remand for further findings as to a voluntary waiver of the constitutional right to an attorney prior to or during interrogation under the facts in this case. *State v. Pierce,* 23 Wn. App. 664, 597 P.2d 1383 (1979). The defendant's petition for review was treated as a notice of appeal under the then applicable RAP 13.2(c).

We reach the same result as the opinion of Judge Ringold and remand for further consideration by the trial court pursuant to this opinion.

The main issue is whether a defendant under custodial arrest, who has asserted his right to counsel, can waive that right prior to consultation with counsel. Second, in this case, did the police improperly interrogate or coerce the defendant after his request for counsel.

The trial court entered findings of fact, part of which were based upon disputed evidence, and entered a conclusion of law. Neither party assigns error to the findings of fact.

From these findings and the record, it was established that the defendant was caught in the act of a daylight armed robbery of a jewelry store in Renton. The store proprietor had escaped out a back door and called the police. The defendant was scooping up jewelry when he saw a policeman at the front door. He went out the back door where he met an armed policeman. He was arrested, frisked, and advised of his constitutional rights. Defendant

refused to answer any questions and stated that he wanted to talk to a lawyer or his lawyer.

During the booking process at the Renton police station, defendant refused to state his name, address or date of birth. He was booked as "John Doe." He was permitted to telephone a friend with a request that the friend obtain a lawyer for him.

Defendant was placed in a cell and about 3 hours later was taken to an interrogation room for questioning by two officers who had not taken part in any of the previous events and who had no knowledge of his request for an attorney. The record contains no evidence bearing on the question whether the defendant was subjected to any words or actions by the police, before he waived his rights to silence and presence of counsel, which would have the effect of inducing the defendant to make incriminating statements.

The defendant was read his rights and then signed a form which is shown on the following page.

Defendant then wrote and signed a 5–page statement admitting in detail the commission of the armed robbery. His signature appears seven times on the explanation of rights, waiver and statement.

While it is not controlling factually, we note that at the later CrR 3.5 hearing, in Snohomish County, defendant admitted that he understood his rights, that he had received public defender representation in the past, and had been advised of his rights possibly 10 to 20 times on prior occasions.

After taking defendant's written statement about the Renton robbery, the police asked, in general terms, about defendant's other activities in Washington. Defendant volunteered that he had robbed a hospital pharmacy in Snohomish County. While the Renton police were aware of that robbery (it occurred about 3 weeks earlier), they had no suspicion that defendant was involved. The Renton police notified Snohomish County authorities of defendant's admission concerning the robbery in their county.

[redacted]

EXPLANATION OF MY CONSTITUTIONAL RIGHTS

Before questioning and making of any statement, I R.T. Pierce _____ have been advised by Det. Dashnea

of the following rights:

(1)  I have the right to remain silent;

(2)  Any statement that I do make can and will be used as evidence against me in a court of law;

(3)  I have the right at this time to an attorney of my own choosing and to have him present before and during questioning and the making of any statement;

(4)  If I cannot afford an attorney, I am entitled to have an attorney appointed for me by a court without cost to me and to have him present before and during questioning and the making of any statement;

I further understand that I have the right to exercise any of the above rights at any time before or during any questioning and the making of any statement.

_____
(signature)

WAIVER OF CONSTITUTIONAL RIGHTS

I have read the above explanation of my constitutional rights and I understand them. I have decided not to exercise these rights at this time. The following statement is made by me freely and voluntarily and without threats or promises of any kind.

_____
(signature)

Subsequently, defendant was arraigned in the Renton District Court where he moved that he be permitted to represent himself. The motion was denied. The trial court found the record not clear as to whether a lawyer was then appointed to represent defendant on the King County robbery charge.

The day after arraignment in King County, two officers of the Snohomish County Sheriff's Department interrogated defendant regarding the hospital robbery. Again defendant was given a statement of his constitutional rights. He signed a form which included the following:

I, *Robert Thomas Pierce* am *41* years of age and my address is _____
*18818 Mathson Rd.* do hereby make the following statement to
*Det J.M. Cull & Det L. Balam* he having first identified him/herself as a
*Deputy Sheriffs* knowing that I may have an attorney in by behalf present and that I do not have to make any statement nor incriminate myself in any manner. I make this statement voluntarily, of my own free will, knowing that such statement could later be used against me in any court of law, and I declare that this statement is made without any threat, coercion, offer of benefit, favor or offer of favor, leniecy or offer of leniency by any person or persons whomsoever.(Initials: ____ )

According to the exhibit, that interview lasted 11 minutes. Defendant not only signed a form admitting the hospital robbery, but initialed two changes in the 3–sentence confession.

Factually, perhaps the most telling matter is defendant's own testimony as to the waiver of the right to counsel. At the CrR 3.5 hearing he was asked:

Q. Mr. Pierce, can you state why, after asserting that you wanted an attorney, that you signed those forms and gave them statements?

A. Well, actually, there's a couple of reasons for it, but basically I didn't really feel that it made a heck of a lot of difference. You know, I knew I was nailed dead back there. I knew certainly I was going to the penitentiary, and it's regular police procedure to try to clear up the cases if it doesn't really, you know—it would be a little different if I had a forgery beef and looking at a year or two in the penitentiary. But what I had, I knew I was going for a long time, and to clear it up, get it off the record, you know.

The problem faced here commences with a sweeping statement in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), at page 474:

If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. . . . If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

Subsequently, *Michigan v. Mosley,* 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975), made it clear that interrogation can be resumed at some point after the individual asserts his right to remain silent as long as the individual's "'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley, supra* at 104. The court found that the right was honored in *Mosley* where the interrogation immediately ceased, there was no effort to wear down resistance, the reinterrogation was by a different officer about a different crime, the reinterrogation began more than 2 hours later, and new warnings were given. But that case did not decide the question of whether an individual can be reinterrogated about the same crime after initially requesting the presence of an attorney. *Mosley, supra* at 101 n.7.

The broad language of *Miranda* was thereafter repeated by Division Two of our Court of Appeals:

> But it apparently remains the rule even after *Michigan v. Mosley, supra,* that a suspect who cuts off police questioning by requesting the presence of counsel, cannot constitutionally be questioned thereafter by the police until he obtains the advice of an attorney.

*State v. Haynes,* 16 Wn. App. 778, 786, 559 P.2d 583 (1977). Yet the exception to the rule was recognized by the same division a few days earlier by this qualifying statement: "unless of course he chooses to voluntarily waive his prior demand for an attorney." *State v. Boggs,* 16 Wn. App. 682, 688, 559 P.2d 11 (1977).

The trial court nonetheless concluded that even though the defendant had "knowingly and voluntarily waived counsel" during interrogation, the police violated the per se rule against subsequent interrogation as stated in *Haynes.*

■ The United States Supreme Court has not directly addressed the question whether an individual can validly waive the right to counsel during interrogation or thereafter once it has first been asserted. But such a waiver appears to be valid for three reasons. First, it would be inconsistent with our scheme of constitutional protection for individual liberty to conclude that an individual can be deprived of

the right to change his mind and submit voluntarily to questioning. Second, in *Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 306, 100 S. Ct. 1682 (1980), in footnote 2, the court indicated in dicta that an individual has the power to subsequently waive "his right under *Miranda* to be free from interrogation until counsel [is] present." Third, all other courts that have addressed this question have apparently reached the same conclusion. *E.g., United States v. Rodriguez–Gastelum,* 569 F.2d 482, 486 (9th Cir. 1978); *United States v. Grant,* 549 F.2d 942, 945–46 (4th Cir. 1977); *United States v. Pheaster,* 544 F.2d 353 (9th Cir. 1976); *United States v. Clark,* 499 F.2d 802 (4th Cir. 1974); *United States v. Hodge,* 487 F.2d 945 (5th Cir. 1973); *State v. Greene,* 91 N.M. 207, 210, 572 P.2d 935 (1977); *People v. Richards,* 194 Colo. 83, 568 P.2d 1173 (1977); *State v. Grange,* 25 Ariz. App. 290, 294, 543 P.2d 128 (1975).

In this case the confusion arose over the nature of the per se rule announced in *Miranda.* Before *Miranda,* the Fifth Amendment was applied on a case–by–case basis to prohibit police tactics that compelled incriminating statements from defendants. In *Miranda,* the court announced that because certain police practices were inherently coercive, they would be held to violate the Fifth Amendment whether or not the defendant was actually coerced in each case. Under *Miranda,* therefore, the focus is primarily on the police practices rather than the perceptions of the particular individual. *See Miranda v. Arizona,* 384 U.S. 436, 468–474, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). Certain police practices, such as the failure to give immediate warnings or continued interrogation after a request for silence or for an attorney, may be and usually are per se violations of the individual's Fifth Amendment rights. Other practices which are not per se violations, such as incommunicado incarceration or lengthy interrogation, may also be found to violate the Fifth Amendment if they have coercive effects in a particular case under the pre-*Miranda* rule. *See Miranda,* at 476.

In the present case, therefore, the analysis must begin with an examination of the police practices to look for per se violations or coercive tactics before going on to consider the defendant's knowledge and the voluntariness of his waiver. An appropriate analysis, when the defendant has once requested the presence of an attorney for questioning, is presented in *Rhode Island v. Innis, supra.* First, was the defendant interrogated after asserting his right to the presence of counsel? Interrogation is defined as "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Footnote omitted.) *Innis,* at 301. Second, was there a prior valid waiver of the initially asserted right? *Innis,* at 298 n.2. Without such a waiver, any continued interrogation is a per se violation. The validity of this waiver must be tested by the coerciveness of the police practices. "[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda,* at 476.

To summarize, the rule that we draw from *Miranda, Mosley,* and *Innis* is that the police may question a suspect who has once cut off questioning by requesting an attorney as long as (1) the right to cut off questioning was scrupulously honored, (2) the police engaged in no further words or actions amounting to interrogation before obtaining a valid waiver or assuring the presence of an attorney, (3) the police engaged in no tactics which tended to coerce the suspect to change his mind, and (4) the subsequent waiver was knowing and voluntary.

In the present case, the trial court concluded that "the defendant knowingly and voluntarily waived counsel" but it made no findings regarding improper interrogation or coercive tactics by the police before the waiver was obtained. We therefore remand to the trial court for further findings of fact or conclusions of law to determine whether the confession is properly admissible in accordance with this opinion.

It is so ordered.

ROSELLINI, STAFFORD, DOLLIVER, HICKS, and WILLIAMS, JJ., and FOLLMAN, J. Pro Tem., concur.

UTTER, C.J. (dissenting)—I dissent to the majority's conclusion inasmuch as our analysis of the validity of the defendant's confession must be governed by the per se rule announced in *Miranda v. Arizona,* 384 U.S. 436, 474, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

The majority acknowledges, as it must, that the United States Supreme Court clearly and expressly declared in *Miranda* that:

> If the individual states that he wants an attorney, the interrogation *must* cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning.

(Italics mine.) *Miranda,* at 474. On subsequent occasions, the court has repeatedly declared that this language from the *Miranda* decision states the applicable per se rule for assertions of the right to counsel. In *Michigan v. Mosley,* 423 U.S. 96, 101 n.7, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975), the court quoted the above passage from *Miranda* and explained that it "detailed" the "procedures to be followed if the person in custody asks to consult with a lawyer . . ." *See also Mosley,* at 104 n.10; 109–10 & n.2 (White, J., concurring). In *Fare v. Michael C.,* 442 U.S. 707, 719, 61 L. Ed. 2d 197, 99 S. Ct. 2560 (1979), the court observed that it had "fashioned in *Miranda* the rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease."

The majority rejects this per se approach required by *Miranda* primarily because it interprets dicta in *Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980), as signalling the United States Supreme Court's abandonment of the per se rule. However, in *Innis,*

the court unambiguously stated that the above quoted passage from *Miranda* "outline[s] in some detail the consequences that would result if a defendant sought to invoke . . . the right to the presence of counsel". *Innis,* 426 U.S. at 297. Although expressly reserving the question of the continued vitality of the per se *Miranda* rule, *Innis,* 426 U.S. at 298 n.2, the *Innis* court did not in any way abolish or diminish this rule.

If and when the United States Supreme Court departs from its per se analysis, we will then be free to determine the appropriate analysis of the validity of a confession obtained after a request for counsel, and to decide whether a per se approach is necessary under article 1, section 9 of the Washington Constitution. However, until the United States Supreme Court ends its consistent adherence to the per se rule, we are bound by the supremacy clause to follow that rule. Accordingly, the confession in this case, obtained after a request for counsel and made during a custodial arrest prior to consultation with counsel, should be suppressed.

HOROWITZ, J., concurs with UTTER, C.J.