MARK W. POULEY, Chief Judge.
THIS MATTER came on before this Court on Defendant’s MOTION TO SUPPRESS statements he made during a custodial interrogation by the Swinomish Tribal Police. The issue before the court is whether the Defendant requested to consult with an attorney during the interrogation, whether the police violated such a request and if so, whether subsequent statements made by the Defendant should be suppressed. The court finds that the Defendant made a request for counsel that was disregarded by the police and the Motion to Suppress all statements made subsequent to the request is GRANTED.
The Defendant was charged with multiple counts of drug possession and conspiracy to deliver drugs and other charges. The Defendant was arrested at his home and transported to the Swinomish Tribal Police station for questioning. It is undisputed that the Defendant was subjected to custodial interrogation and prior to that interrogation he was properly advised of the rights afforded to him by the Indian Civil Rights Act and the Swinomish Tribal Code.[1] During the initial interrogation, the Defendant appears to admit to personal use of non-prescribed pain killers, but consistently denies any involvement in the sale or distribution of drugs. The conversation also covers the Defendant’s history of drug use, disputes with his family, and particular concerns about his children’s welfare. Approximately thirty minutes into the interview, the interviewing officer begins to explore the amount of drugs the Defendant purchased and used over a given period of time. At this point the following exchange occurs:
D(efendant): Look, I’ve got this problem. I need to get it fixed. No time for shining here.[2] I’m gonna wait for a lawyer. You know, I screwed up. I know it.
O(fficer): You’re gonna wait for a lawyer for what? To get—, for your—, I don’t understand what you just said.
D: You told me that, you know, to wait for a lawyer, you read me my Miranda rights.
0: Right.
D: We all know we screwed up. I gotta fix it.
O: O.K. Are you wanting to talk to me or do you want to talk to a lawyer. Are you saying you don’t want to talk to me?
D: Well, you’re trying to construe everything and get me to say shit. Not cool man.
0: I’m trying to get you to explain, to clarify.
D: Yah, so you can build up this big frickin’ ordeal and make it worse.
*181 0: Hold on bud, don t put that on me, the ordeal is already here. I’m trying to—actually what I’m trying to do is to minimize.
D: You’re trying to get a collar man, you know.
0: I already got that bud, you’re already under arrest.
D: What do you need?
0: First of all, do you want to talk to me, or are you telling me you want a lawyer?
D: Yah sure, I’ll talk to you.
0: O.K. I told you before hand, Vincent Reid, the first guy I met here, can’t be all that bad. O.K. What I’m trying to do is give you a chance to explain your side of this. To explain your side of what we know. Are you a big drug dealer or is it just a couple of times a month?
The interview continues ¡from there.
While Federal and State court decisions regarding right to counsel during custodial interrogation are not controlling in this court, they can be instructive in developing a rule of law that is consistent with the precedents of this court and the jurisprudence of the tribal community. In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the Supreme Court established the rule that if an accused indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no further questioning. This rule preserves the Defendant’s right against self incrimination. Upon making an unambiguous request for counsel, all interrogation must cease. Edwards v. Arizona, 451 U.W. 477 (1981). The tribe argues that the Defendant’s initial statement, “I’m gonna wait for a lawyer”, is ambiguous, in which case the officer is permitted to ask questions to clarify if the Defendant is seeking to invoke his right to counsel. See, State v. Smith, 34 Wash. App. 405, 661 P.2d 1001 (1983). The tribe also argues that the Defendant continues talk and therefore initiates further communication with the officer, which is also a recognized exception to the rules announced in Miranda and Edwards. While the Court agrees with this line of case law, it does not provide for an exception under the facts of this case.
The tribe argues that the Defendant’s initial statement was ambiguous because, given the context the many personal problems that the Defendant already discussed, it was unclear for what reason the Defendant wanted to wait for an attorney. Assuming arguendo that this first statement is ambiguous, following the officer’s first attempt to clarify, the Defendant was clear and unambiguous when he referenced the officer reading him is Miranda rights and that he could “wait for a lawyer.” At this point, all interrogation should have immediately ceased. But the conversation continued, and ultimately the Defendant agreed to speak to the officer without the presence of an attorney and the interrogation proceeded.
It is true that even after invoking his right to counsel a suspect can waive his right to counsel by knowingly and voluntarily reinitiating conversations with the police. For such an action to be valid, however, the police may not engage in any tactics which may tend to coerce the suspect to change his mind. See, State v. Smith, at 409, 661 P.2d 1001; State v. Pierce, 94 Wash.2d 345, 618 P.2d 62 (1980). Custodial interrogation is inherently coercive and the court must adopt rules that will prevent the police from badgering a defendant into waiving his previously asserted rights. See, Michigan v. Harvey, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990). Admittedly, this is an extremely close case, and the interviewing *182 officer engaged in no offensive tactics, but it is clear from the context that the conversation centered more upon how the Defendant could help his own case by continuing the interview, and by implication, not waiting for an attorney. The court is unable to conclude that the Defendant made a free and voluntary waiver of his previously asserted right to counsel, nor did he willfully reinitiate the interview with the officer after having so asserted his rights.
The conversation continues without a clear break, and the tribe argues from this that the officer was merely trying to clarify the ambiguity and that the Defendant continued to talk and ultimately reinitiated the interview. Close review of the interview does not support this interpretation of the events. After the officer asks the Defendant a second time if he wants to talk to him or wait for a lawyer, the Defendant accuses the officer of “trying to construe everything” and “make him say shit.” In this statement the Defendant is not demonstrating a willingness to speak, but instead expressing distrust in the direction of the conversation was going. While the officer then says he is trying to “clarify” it is obvious from the context that the officer is not saying he is trying to clarify the ambiguous statement about a lawyer, but he is trying to get the defendant to explain and clarify the events. The officer says he wants to help the Defendant “minimize” the situation. In this portion of the conversation, it does not appear that the officer has misunderstood the Defendant’s request for an attorney, but is attempting to explain to the Defendant why he may not want or need an attorney.
The Court finds that the Defendant made a clear and unambiguous request for a lawyer and all interrogation should have immediately ceased. The officer continued to engage the suspect in conversation apparently intended to encourage the Defendant to continue the interview without the assistance of counsel. The Court GRANTS the motion and all statements made by the Defendant following his request for counsel must be suppressed at trial. Dated this 24th day of October, 2011.

. SITC 3-03.130(C) requires all suspects to be advised that "he or she has the right to the presence of counsel ... prior to any questioning.” This right is undisputed by the parties and is treated as a given by this opinion.

. The Defendant’s statement is a bit garbled and unclear. The tribe quotes the defendant as saying "Time to shine here", but it sounds as if he may say “No time ..That would alter the meaning, but not the court's ruling. In argument to the court, the Tribe suggests the Defendant referenced the notion of "shining" a number of times in different contexts before this statement, therefore rendering the statement ambiguous. In fact, it was the interviewing officer that used the term several times, suggesting to the Defendant that it was his “time to shine”, presumably meaning he should step forward and be honest about the events. It doesn't appear the Defendant ever used this term until it was introduced by the officer.