[No. 2015-2.    Division Two.    January 7, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. WILBURN CARL BOGGS, JR., *Appellant*.

*Steven E. Lundstrom,* for appellant.

*Guy M. Glenn, Prosecuting Attorney,* for respondent.

REED, J.—Defendant Wilburn Carl Boggs, Jr., appeals

from a Pacific County judgment and sentence entered upon a jury verdict finding him guilty of one count of armed robbery. On appeal error is assigned to (1) the admission into evidence of defendant's alleged response to a deputy sheriff's questions after defendant had requested an attorney and had asserted his right to remain silent; (2) permitting defendant's accomplice to testify as a witness for the State; and (3) the court's refusal to admit into evidence as a basis for impeachment the transcript of the accomplice's deferred sentence hearing. We find no grounds for reversal, and the judgment of the trial court is affirmed.

The events giving rise to this appeal began at approximately 1:45 p.m. on Friday, May 2, 1975, when a man wearing a nylon stocking over his face and clad in a green rain poncho and dark knit hat pointed a pistol at the proprietors of a neighborhood grocery store in East Raymond and demanded that they hand over the money in the cash register. After the store owners complied with his demands, the robber exited from the store and was picked up by another individual, who was driving an older model blue pickup truck with a distinctive black tailgate.

Later that same afternoon investigative officers went to the Boggs residence and requested that the defendant accompany them to the police station for questioning. Boggs agreed, and prior to their departure he was read his constitutional rights. On Saturday, the day after the robbery, the police contacted one Joachim Preinesberger, a known associate of the defendant. When questioned concerning his whereabouts at the time of the robbery, Preinesberger admitted that he had driven the blue pickup truck. In addition to detailing his own involvement in the robbery, Preinesberger aided the police in locating both the money and the clothing used in the robbery, and identified defendant Boggs as the other perpetrator of the crime.

Defendant was placed in custody following his apprehension on Friday afternoon. During the course of the weekend he was interrogated several times by members of both the Pacific County Sheriff's Office and the Raymond Police

Department. On at least two occasions, including after he was confronted with the fact of Preinesberger's arrest and confession, Boggs refused to answer questions and requested an attorney. At that time he was unable to retain private counsel, and under local practice, his request for appointed counsel could not be granted until Monday when court convened.

On Sunday, May 4, 1975, after making a phone call, defendant Boggs was returning to jail with a deputy sheriff. He and his escort became engaged in a casual conversation, during the course of which the deputy indicated that it would be helpful if the defendant could clear up a couple of unresolved matters in connection with the robbery. When Boggs failed to answer, the deputy asked what he had done with the money and the clothes used in the robbery. This time Boggs responded. Defense counsel's motion to suppress all testimony relating to that conversation was denied, and both the defendant and the deputy testified at trial. The deputy's recollection was that the defendant made an incriminating response:

A  I indicated that if he could tell us specifically where the clothes were that he had used and what happened to the rest of the money, it would be a big help. To those questions he did have a reply.
Q  What was his reply?

. . .

A  He stated that the clothes that he used he had given to Mr. Preinesberger shortly before leaving Preinesberger's residence. He said he did not know what happened to the clothes after that point.
Q  You specifically remember him saying the clothes that he used?
A  Yes.
Q  Did he make any other statements?
A  Yes. In reference to the money he stated that the money that he put into the garage was all that had been taken. There was no other money to his knowledge.

Defendant testified to a different version of the conversation:

A  I told him that I didn't know where the money was. I

told him Preinesberger probably had the clothes. That's when he went down and asked Preinesberger.

Q In other words he testified to a different statement from the one you made, is that correct?

A Yes. We talked about all different things while we was walking across the boardwalk from making the phone call. He just throwed that in there and I said, "I didn't know where the money is at." I said, "You'd have to ask Preinesberger." That's what he did.

Defendant assigns error to the admission of the deputy's testimony relating to the above described conversation.

■ Statements obtained from an individual who is subjected to custodial police interrogation are admissible provided certain procedural safeguards are properly observed so that the individual is fully accorded his privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). *Miranda* states that in the event the individual expresses a desire to have the assistance of counsel or chooses to assert his right to remain silent, all interrogation must cease. *Miranda v. Arizona, supra* at 473-74. *See also Michigan v. Mosley*, 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975); *Williams v. Brewer*, 509 F.2d 227 (8th Cir. 1974); *United States v. Menichino*, 497 F.2d 935 (5th Cir. 1974); *United States v. Jeffery*, 473 F.2d 268 (9th Cir. 1973); *State v. Chapman*, 84 Wn.2d 373, 526 P.2d 64 (1974).

In the instant case the prosecution contends that Boggs' statements are admissible even though they were made after defendant had declined to answer any questions and had requested an attorney. First, it is suggested that the incriminating statements were not the product of interrogation, but rather were voluntary responses made during the course of an informal conversation. As *Miranda* clearly indicates, "interrogation" encompasses much more than mere question-answer sessions; often the more successful techniques include psychological tactics and patient maneuverings designed to undermine the suspect's will to resist. *See Miranda v. Arizona, supra* at 448-56. Any custodial statement is suspect and the burden is upon the State to demon-

strate, if it can, that such a statement was "volunteered" in the *Miranda* sense, *i.e.*, that it was spontaneous and not prompted by questioning or other action calculated to elicit response. *State v. Toliver*, 6 Wn. App. 531, 494 P.2d 514 (1972); *State v. Ratow*, 4 Wn. App. 321, 481 P.2d 20 (1971). We cannot say that Boggs' statements were spontaneous and freely given; he had been in custody for 3 days and had been unable to confer with an attorney, on more than one occasion he had asserted his *Miranda* rights, and his statements were prompted by the remarks of the deputy sheriff who was escorting him to the phone.

The State also argues that the statements are admissible under the rule announced in *Michigan v. Mosley, supra* at 102, that exercise of the right to remain silent and to thereby terminate interrogation does not create a per se proscription of indefinite duration upon any further questioning by the police.[1] The admissibility of statements obtained after a person in custody has exercised his *Miranda* right to remain silent is dependent upon whether that right was " 'scrupulously honored.' " *Michigan v. Mosley, supra* at 104. Washington has had the opportunity on one occasion to apply the *Mosley* holding. In *State v. Robbins*, 15 Wn. App. 108, 547 P.2d 288 (1976), the facts again lent themselves to finding that the defendant's exercise of her right to remain silent had been scrupulously honored. She was first interrogated on Friday. When she indicated that she did not wish to answer any questions the session was immediately halted, and she was not confronted again until the following Monday, at which time she was readvised of her rights. She chose then not to remain silent any longer and proceeded to confess to the charges against her.

We think defendant's decision in the instant case to

[1] In *Michigan v. Mosley*, 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975), the court noted many state and federal decisions have concluded that *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), does not create a per se proscription of any further interrogation once the person being questioned has indicated his desire to remain silent. *See Michigan v. Mosley, supra* at 103 n.9.

assert his right to remain silent was not scrupulously honored. Although *Mosley* differs factually from the instant case in that there different law enforcement officers questioned the suspect about two separate offenses, we do not think these distinctions are determinative. *State v. Robbins, supra.* It is our opinion that the factors which caused the court in *Mosley* to conclude defendant's rights had been "scrupulously honored" were that the police had ceased interrogation immediately upon the defendant's exercise of his rights, that they resumed their interrogation only after the passage of a significant period of time, and that subsequent interrogation was preceded by a reiteration of the *Miranda* rights. *Michigan v. Mosley, supra* at 106. In the instant case defendant's *Miranda* rights were not repeated prior to his allegedly responding to the deputy's remarks with incriminating statements. When a person has chosen to remain silent, we think, and *Mosley* seems to indicate, that the *Miranda* warnings must be readministered before law enforcement agencies can recommence interrogation. To permit otherwise would enable the police to convey the impression that any previous assertion of the right to remain silent was merely a technical obstacle requiring only token observance before questioning could resume. On the other hand, to readvise the individual of his *Miranda* rights demonstrates that his earlier decision to remain silent has been recognized by the police, and also reminds the individual that he can continue to exercise those rights. This is not to say the individual could not by his own voluntary and unsolicited action waive a previous exercise of his constitutional rights without first having the *Miranda* warnings reread to him. *Miranda v. Arizona, supra* at 478. That situation differs factually from one in which the State is responsible for reinitiating the interrogation process. When the police either reopen a formal interrogation or solicit a response from a defendant in some other way, such statements will be admissible only if they were preceded by the *Miranda* warnings. *See Michigan v. Mosley, supra; State v. Robbins, supra.*

██ ˙We also find that it was improper for the authorities to continue the interrogation after defendant had requested the assistance of an attorney. *Miranda* outlines the proper procedure to be followed in the event the individual exercises his right to have an attorney present, and in so doing describes the circumstances under which interrogation may be resumed:

> If the individual states that he wants an attorney, the interrogation must cease *until an attorney is present.* At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning.

(Italics ours.) *Miranda v. Arizona, supra* at 474. *See also Michigan v. Mosley, supra* at 101 n.7. Subsequent application of this rule in the federal courts leads us to conclude that *Miranda* did not contemplate any room for compromise.[2] *E.g., United States v. Clark,* 499 F.2d 802 (4th Cir. 1974); *United States v. James,* 493 F.2d 323 (2d Cir. 1974); *United States v. Blair,* 470 F.2d 331 (5th Cir. 1972). Accordingly, once an attorney is requested, questioning must desist until the individual has received the assistance of counsel, unless of course he chooses to voluntarily waive his prior demand for an attorney. *See Miranda v. Arizona, supra; Michigan v. Mosley, supra.* Under the circumstances of this case, interrogation should not have been resumed until defendant had obtained the services of a court-ap-

---

[2]By way of comparison, Mr. Justice White also emphasized the unqualified character of the court's statement in *Miranda v. Arizona,* 384 U.S. 436, 474, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), with respect to resuming interrogation after an individual has requested an attorney:

> [R]equiring interrogation to *cease* after an assertion of the "right to silence" tells us nothing because it does not indicate how soon this interrogation may resume. The Court showed in the very next paragraph, moreover, that when it wanted to create a *per se* rule against further interrogation after assertion of a right, it knew how to do so. The Court there said "[i]f the individual states that he wants an attorney, the interrogation must cease *until an attorney is present."*

*Michigan v. Mosley, supra* at 109-10. (Concurring opinion by Justice White.)

pointed attorney, and accordingly, it was improper to permit the deputy sheriff to testify with respect to the incriminating statements allegedly made by the defendant on Sunday.

■ Having concluded that the testimony in question was inadmissible, we must now determine whether such error constitutes grounds for reversal. In *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967) (comment upon defendant's failure to testify), the court announced the standard for determining whether a constitutional error is harmless:

> There is little, if any, difference between our statement in *Fahy* v. *Connecticut* [375 U.S. 85, 11 L. Ed. 2d 171, 84 S. Ct. 229 (1963)] about "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. . . . [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

The harmless error theory of *Chapman* has since been applied on several occasions to a variety of constitutional errors. For example, in *Harrington v. California*, 395 U.S. 250, 251, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969), the court found that there was overwhelming independent evidence of guilt, and that admission into evidence of the confession of a codefendant who did not take the witness stand was "harmless beyond a reasonable doubt." *See also Estelle v. Williams*, 425 U.S. 501, 48 L. Ed. 2d 126, 96 S. Ct. 1691 (1976) (defendant appearing at trial in prison clothes); *Brown v. United States*, 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565 (1973) (improper admission of a codefendant's statements); *Milton v. Wainwright*, 407 U.S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174 (1972) (admission of an involuntary confession); *Schneble v. Florida*, 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972) (improper admission of a codefendant's statement). In Washington our Supreme Court

has found harmless error in the admission of incriminating statements obtained in violation of *Miranda. State v. Nist*, 77 Wn.2d 227, 461 P.2d 322 (1969).

In the instant case our review of the record leads us to conclude that there is overwhelming evidence of Boggs' guilt. The proprietors of the store provided a general physical description of the robber that corresponds with the physical features of the defendant. In addition their detailed description of the robber's attire matches the clothing identified by Preinesberger as having been used in perpetrating the crime. Three neighbors of the grocery store placed the distinctive blue truck at the scene during the time the robbery was in progress, and two of those neighbors also saw the person driving the blue truck stop to pick up an individual wearing a green rain poncho. Boggs was proven to be the owner of the blue pickup with the black tailgate, and was seen driving it shortly after the robbery by two policemen, one of whom observed him at a roadblock and the other on the road leading away from the store. The above evidence served to corroborate the testimony of Preinesberger, whose first-hand account of how events transpired was very detailed and complete. Defendant introduced no evidence to contradict Preinesberger's testimony and offered no explanation of his whereabouts at the time of the crime. Under all the facts and circumstances of this case, we must find that error in permitting the deputy sheriff to testify about defendant's statements allegedly made on Sunday, May 4, 1975, is harmless beyond a reasonable doubt.

Boggs next contends that Preinesberger, who had received a deferred sentence and probation, should not have been allowed to testify. The gist of his contention is that even though the disposition of the State's case against Preinesberger had been completed, Preinesberger's testimony was nevertheless affected by his hopes or fears that his probationary status would somehow be influenced by the content of his testimony. Defendant's reliance on *Bradford v. Johnson*, 354 F. Supp. 1331 (E.D. Mich. 1972), a case in

which a witness was physically beaten and tortured, is sorely misplaced. Here there is no suggestion of any violence and no showing, other than pure speculation, that the prosecution influenced Preinesberger's testimony: defendant was afforded ample opportunity to prove bias and demonstrate any influence when he cross-examined Preinesberger.

Lastly, defendant contends that his right to cross-examine Preinesberger was improperly curtailed when the court refused to admit the transcript of Preinesberger's deferred sentence hearing. Great latitude should be allowed in the cross-examination of an accomplice, and on the basis of such cross-examination, counsel should be able to criticize and comment to the jury on the interests of such a witness and how those interests affect his credibility. *State v. Wilson*, 70 Wn.2d 638, 424 P.2d 650 (1967). While cross-examination of a witness for the State is a matter of right, the scope or extent of such cross-examination is a matter within the discretion of the trial court. *State v. Wills*, 3 Wn. App. 643, 476 P.2d 711 (1970); *State v. Robbins*, 35 Wn.2d 389, 213 P.2d 310 (1950). Here there is some suggestion that the transcript in question contained remarks by the sentencing judge that might possibly constitute a comment on the evidence if admitted in the instant case. In view of such a possibility we do not think that the trial judge abused his discretion by refusing to admit the transcript. In any event any error would not be prejudicial; the terms of Preinesberger's probation were fully exploited so that the jury had ample basis to infer bias, and there is no indication the transcript would have been anything but cumulative. *See State v. Wilson, supra* at 643.

The judgment of the trial court is affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied February 17, 1977.

Review denied by Supreme Court July 27, 1977.