[No. 4789–II. Division Two. January 15, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY
M. MASON, *Appellant*.

*Kenneth G. Johnson* and *Richard L. Brosey,* for appellant.

*John Panesko, Jr., Prosecuting Attorney,* for respondent.

PETRIE, J.—Defendant, Gary Mason, appeals his conviction for first degree assault. Defendant's appeal essentially raises two questions: (1) whether he waived his right to counsel and made a voluntary statement to the police, and (2) whether the corpus delicti was properly shown at trial prior to the introduction of admissions he made to police and others. We answer both inquiries in the affirmative and, accordingly, affirm.

Shortly after midnight on January 1, 1980, this 17-year-old defendant and a companion escaped from the Green Hill School in Chehalis, a juvenile detention facility. They were apprehended by school staff at approximately 7:30 a.m. a couple of miles from the facility. During the same early morning hours of January 1, Mr. Thomas Richardson fell asleep in his pickup truck in his driveway. A sergeant in the sheriff's office drove past the Richardson driveway and saw someone "ducking down" on the outside of the truck on the passenger side. The sergeant, thinking he may have encountered a "gas theft", approached the truck and found Mr. Richardson slumped over in the cab of the truck, essentially unresponsive, and bleeding profusely from a scalp wound. Lying on the ground alongside the passenger side was a hatchet similar to one owned by a neighbor. It was later determined that Mr. Richardson suffered a depressed skull fracture "most probably inflicted by a sharp instrument."

On January 8, 1980, Detective Neiser of the Lewis County Sheriff's Department contacted defendant at Green

Hill School. Defendant was advised of his rights as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), and was asked about the events of his escape. Defendant made a statement detailing the path the escapees had traveled near the Richardson home, but he did not mention any involvement in the assault on Richardson. On January 11, Detective Neiser administered a psychological stress evaluation test to defendant to check the veracity of his escape story. Defendant was not given *Miranda* warnings on that occasion, but was accompanied by a counselor from Green Hill School during the interview, and was advised that the test was purely voluntary.

Defendant and his escape companion were arrested on assault charges by Detective Neiser and another officer on February 4 at Green Hill in the Madrona Cottage where they resided. After being advised of their *Miranda* rights, both were transported to the Juvenile Detention Center on the school grounds where they were booked. The sequence of events that followed and the accompanying conversations are disputed, but we accept the trial court's findings of fact entered pursuant to the pretrial CrR 3.5 hearing. Because defense counsel assigned no error to the findings of fact, we treat them as verities on appeal. *State v. Christian,* 95 Wn.2d 655, 628 P.2d 806 (1981).

Defendant, after booking, requested to speak to Detective Neiser. He asked Neiser a series of procedural questions, which were answered. Neiser then asked defendant if he wanted to make a statement. Defendant declined and indicated that he wished to see an attorney; he was then returned to his cell. Approximately 15 to 20 minutes later, defendant again requested to speak to Detective Neiser. He was brought to Neiser and advised Neiser that he was scared. Neiser responded, "I don't blame you, these are serious charges." Defendant then stated, "We didn't mean to kill him, all we wanted to do was take his truck." Defendant and Neiser then discussed the defendant's participation in the assault. At some point in this conversation

defendant was advised of a possible remand to adult court.

Subsequently, defendant was asked to make a written statement. He did so after being shown the results of the stress test which, he was told, indicated deceptive answers.

At the CrR 3.5 hearing, both the written statement and defendant's oral statement to Neiser were initially suppressed as the product of psychological coercion. However, the trial court partially reversed itself and permitted trial use of the oral statement made to Detective Neiser on February 4 as a volunteered statement after a knowing waiver of rights. The oral statement was subsequently admitted at the superior court trial (to which defendant had been remanded) along with inculpatory statements defendant made to other Green Hill residents.

We consider first the refusal to suppress defendant's oral admissions. Once an accused has asserted his right to counsel all questioning should cease until an attorney is present. *Miranda v. Arizona, supra; State v. Chapman,* 84 Wn.2d 373, 526 P.2d 64 (1974). However, an accused can make a knowing and intelligent waiver after an initial assertion of rights. *Brewer v. Williams,* 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (1977); *North Carolina v. Butler,* 441 U.S. 369, 60 L. Ed. 2d 286, 99 S. Ct. 1755 (1979); *State v. Marcum,* 24 Wn. App. 441, 601 P.2d 975 (1979). An express waiver is not necessary as long as the waiver is voluntary and knowing. *North Carolina v. Butler,* 441 U.S. at 373.

The admissibility of a confession obtained after the assertion of *Miranda* rights depends on whether the request was "scrupulously honored." *Michigan v. Mosley,* 423 U.S. 96, 104, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975); *State v. Boggs,* 16 Wn. App. 682, 559 P.2d 11 (1977). A per se prohibition of any further interrogation, once an accused has asserted his right to counsel, has been rejected in this state. Further questioning of a suspect is allowed provided the following conditions exist: (1) the right to cut off questioning was scrupulously honored; (2) the police engaged in no further words or actions amounting to interrogation

before obtaining a waiver or assuring the presence of an attorney; (3) the police engaged in no tactics which tend to coerce the suspect; and (4) the subsequent waiver was knowing and voluntary. *State v. Pierce,* 94 Wn.2d 345, 618 P.2d 62 (1980).

Accepting the CrR 3.5 findings as verities on appeal, it is clear that, once defendant asserted his right to counsel, conversation with the detective ceased and he was returned to his cell. This conduct by the police assured that defendant's invocation of *Miranda* rights was "scrupulously honored." *State v. Boggs, supra.* The subsequent conversation between defendant and Detective Neiser, wherein defendant confessed, was *initiated by defendant himself.* The police engaged in no further interrogation after defendant asserted his right to counsel. *State v. Pierce, supra.*

Furthermore, there is no evidence from the record that the police engaged in coercive tactics as defined by *Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980), to obtain either defendant's waiver or the confession itself. There is nothing in the record to suggest that the police officers were blatantly ignoring defendant's request for counsel. Between the time of defendant's booking and his incriminating statement to Detective Neiser only 15 to 20 minutes had elapsed. During this entire time Neiser was occupied elsewhere in the detention center. This is hardly an attempt to hold someone incommunicado or subject him to subtle coercive pressure. Furthermore, we cannot say that Neiser's response to defendant's statement, "I'm scared," was the use of psychological pressure calculated to induce an incriminating response. *State v. Boggs,* 16 Wn. App. at 685. Neiser's response appears to be a spontaneous expression of a sound opinion—not something calculated to evoke any retort, much less an inculpatory declaration.

■■ The voluntariness of the waiver must be shown by a preponderance of the evidence, not beyond a reasonable doubt. *State v. Braun,* 82 Wn.2d 157, 509 P.2d 742 (1973); *State v. Gross,* 23 Wn. App. 319, 597 P.2d 894 (1979). This

standard is met by substantial evidence. Furthermore, the waiver may be inferred from the defendant's understanding of his rights and the voluntariness of his conversation with police officers. *State v. Gross,* 23 Wn. App. at 324.

Defendant was read his *Miranda* rights at Madrona Cottage approximately 30 minutes before his incriminating statement to Detective Neiser. Defendant has a substantial juvenile criminal history including auto theft, burglary, trespassing, criminal burning and theft in the first degree. Though not controlling, we note there was testimony at the CrR 3.5 hearing that defendant had been advised of his *Miranda* rights approximately 12 times in 5 years. Defendant certainly was no stranger to a criminal investigation, and it could be assumed that he understood his rights and the consequences of both a waiver of rights and cooperation with the police.

The fact that defendant requested to talk to Detective Neiser, and then blurted out his confession is further evidence of a voluntary waiver[1] and voluntary confession. *See State v. Boggs,* 16 Wn. App. at 687. (By voluntary and unsolicited action a person can waive a previous exercise of his constitutional rights without first having his *Miranda* warnings re–read to him.) The police cannot be expected to interrupt with a renewed recitation of *Miranda* warnings every time an accused feels the need to cleanse his conscience. *Miranda v. Arizona* does not bar volunteered statements.

There is substantial evidence in the record to support the

---

[1]The following exchange between defendant and his counsel at the CrR 3.5 hearing indicates the voluntariness of the waiver.

Q. When did you request an attorney?

A. In the Youth Center.

Q. Before you talked to Detective Neiser the first time?

A. Yes.

Q. Did you change your mind then when you decided to talk to him, you decided you didn't need an attorney?

A. Yes.

Q. Did anybody persuade you to do that?

A. No.

trial court's "finding" that defendant made a voluntary waiver of his right to counsel and that the incriminating statement which followed was a product of the voluntariness.[2] We find no error.

We turn now to defendant's contention that the corpus delicti was not properly shown before the State introduced testimony of defendant's admissions to Detective Neiser and to Green Hill residents about his participation in the assault on Richardson. An extrajudicial admission or confession may be admitted only after the State establishes the corpus delicti of the crime by independent evidence. *State v. Fagundes,* 26 Wn. App. 477, 614 P.2d 198 (1980). Defendant does not seriously challenge the sufficiency of evidence to support the generic crime of assault. Rather, he challenges the State's failure to prove the corpus delicti of first degree assault as charged in the information. The charging portion of the information recited:

> The defendants, GARY M. MASON and [companion], together and each of them, in Lewis County, State of Washington, on or about the 1st day of January, 1980, with intent to commit the felony of Taking a Motor Vehicle Without Permission upon the property of Thomas J. Richardson, did assault such person with a deadly weapon, to–wit, a hatchet; and any force or means likely to produce death; contrary to RCW 9A.36.010(1)(a).[3]

Defendant contends the State failed to establish, by

---

[2]Defendant argues that, since he was a juvenile and the circumstances concerning when he was informed of a possible remand to adult court are uncertain, his confession should be judged with more scrutiny. Without accepting this interpretation of the facts, we note that the voluntariness of the confession is amply demonstrated so as to meet the totality of the circumstances test applied to a juvenile's confessions by *Dutil v. State,* 93 Wn.2d 84, 606 P.2d 269 (1980).

[3]RCW 9A.36.010 provides in pertinent part as follows:

"(1) Every person, who with intent to kill a human being, or to commit a felony upon the person or property of the one assaulted, or of another, shall be guilty of assault in the first degree when he:

"(a) Shall assault another with a firearm or any deadly weapon or by any force or means likely to produce death; or

"(b) Shall administer to or cause to be taken by another, poison or any other destructive or noxious thing so as to endanger the life of another person."

independent evidence, the element of his intent to commit another felony, *i.e.,* that he intended to take Richardson's truck without permission. The defendant would have us hold that the corpus delicti of assault in the first degree requires independent evidence of three elements: (1) an assault upon the victim, (2) an assault committed with a deadly weapon, and (3) with *intent* to commit a felony. This construction makes intent of the accused an element of corpus delicti. Essentially, defendant's argument is that all the material elements of the statutory offense are necessary to establish the corpus delicti. We disagree and decline to impose such a rule.

■ Prior to trial use of an accused's confession the prosecution must present independent evidence which supports a logical and reasonable conclusion that (1) a specific kind of injury or loss occurred, and (2) some person's criminality was the source of that injury or loss. *State v. Fagundes, supra; State v. Zuercher,* 11 Wn. App. 91, 521 P.2d 1184 (1974). The mental element of the felony charged need not be proved by independent evidence prior to trial use of a defendant's confession when that element of the crime charged provides merely the *degree* of the generic crime charged. That element may be supplied by use of the confession in combination with any independent evidence used to establish the corpus delicti. *State v. DePriest,* 16 Wn. App. 824, 560 P.2d 1152 (1977). *Accord, Jones v. State,* 253 Ind. 235, 252 N.E.2d 572 (1969); *State v. Johnson,* 31 N.J. 489, 158 A.2d 11 (1960).

One commentator has enunciated the majority rule on the issue as follows:

> The majority of courts do not demand independent evidence of every fact that must be established in order to bring about a conviction. Thus, in a case in which federal court jurisdiction depended upon the race of the deceased, a confession was held to be sufficient evidence of that fact. It is also usually held that the corpus delicti does not include those aspects of a crime that determine the defendant's punishment but not his guilt: the degree of the offense or its technical description (for example,

whether it is burglary or larceny) or the number of counts involved. It is apparently thought unlikely that only such minor details of an otherwise acceptable confession would be untruthful. Occasionally, courts have required independent evidence of the technical details of an offense, but they have usually undermined their demands by accepting evidence of minimal probative value.

(Footnotes omitted.) 79 Harv. L. Rev. 938, 1074–75 (1966).

In the case at bench, prima facie evidence of the element of the intent to take the victim's vehicle without his consent may not have been established without use of defendant's admissions. Nevertheless, the independent evidence combined with those admissions clearly establish that during his few hours of "freedom" in the early hours of January 1, 1980, defendant traversed a path within the vicinity of the victim and that defendant's intent was solely to "take his truck." Rather clearly, the independent evidence established the trustworthiness of his confession. We find no error in the trial court's order permitting trial use of defendant's admissions.

Finally, defendant assigns error to the manner of his arrest. We find no merit in this argument. Defendant's involuntary detention at Madrona Cottage did not make it his home as contemplated by *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). His arrest was valid.

Judgment affirmed.

REED, C.J., and PEARSON, J., concur.

Reconsideration denied February 9, 1982.

Review denied by Supreme Court April 9, 1982.