# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) No. 71067-2-I
    Respondent, )
) DIVISION ONE
v. )
)
) UNPUBLISHED OPINION
BRIAN BRUSH, )
)
    Appellant. ) FILED: May 12, 2014

SPEARMAN, C.J. — Brian Brush was convicted of aggravated first degree murder and ordered to serve an exceptional sentence of 1,060 months of incarceration. He appeals. We affirm the judgment and remand for resentencing.

## FACTS

On September 11, 2009, at approximately 4:40 p.m., three police officers were on foot patrol at a car show in Long Beach, Washington. As they were patrolling, they heard a gunshot on the beach. When they looked in the direction of the shot, they saw Brian Brush fire a shotgun three more times, thereby killing his girlfriend, Lisa Bonney, who stood a few feet away.[1]

The three officers approached Brush, their weapons drawn. When Brush, a former police officer, observed the approaching officers, he tossed the shotgun aside, walked towards the officers, and followed their commands as they secured

---

[1] A number of other individuals also observed the shooting. In particular, two tourists testified that they observed the shooting and Brush being taken into custody.

the area. As Brush was on the ground being handcuffed, Raymond Police Officer Arlie Boggs asked him if he had been shooting at a human being; Brush responded "yes." Verbatim Report of Proceedings (10/12/11) at 9. Boggs then read Brush Miranda[2] warnings. When asked if he wanted to talk to police, Brush replied, "no". VRP (10/12/11) at 12.

A short time later, Deputy Chief Heath Layman of the Cosmopolis Police Department arrived on the scene and took control of Brush from the other officers. At 4:48 p.m. Layman re-read Brush his Miranda rights from a preprinted form which included "Yes" and "No" check boxes for officers to indicate whether a suspect wished to answer questions. When Layman asked Brush if he wished to talk Brush replied that he would talk to police once he was removed from the crime scene. Layman checked the box labeled "No." VRP (10/12/11) at 54. Layman did not ask Brush, who was handcuffed, to sign the form in the space provided.

After about forty-five minutes, Brush was transported to the Pacific County Sheriff's Office, where he was interviewed by Layman and Ron Clark, the Pacific County Undersheriff. The officers recorded the interview, which commenced at 5:52 p.m. Exhibit H (5:52 p.m.).[3] The beginning of the recording contains Brush's acknowledgment that he was previously advised of his constitutional rights, however the recording includes no admonishment of Miranda warnings or that the interview was being recorded.

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[3] Exhibit H contains transcripts of two recorded interviews with Brush. They are distinguished herein by notation of the start time of each interview (5:52 p.m. or 7:27 p.m.).

In the 5:52 p.m. statement, Brush described his volatile relationship with Bonney and the abuse he allegedly suffered at her hands. He also indicated that he had no memory of shooting Bonney. After about thirty minutes, Brush requested an attorney and the interview stopped.

Later that evening, Layman received a phone call from Chief Flint Wright of the Long Beach Police Department. Chief Wright told Layman that Brush had changed his mind and wanted to continue talking.[4] Layman was also informed that he was the only person to whom Brush was willing to talk. Layman returned to the Pacific County Sheriff's Office and conducted a second recorded interview of Brush, which lasted from 7:27 to 7:39 p.m. The second interview began with an admonishment of the Miranda warnings, Brush's waiver of his rights, and notice that the interview was being recorded. In this statement, Brush described how Bonney had scratched him, hit him, and verbally abused him. He told Layman that prior to the shooting he had tried to get in the truck and get away from Bonney. He also stated that he had no memory of retrieving the gun from the truck or shooting Bonney. Layman ended the interview at 7:39 p.m. after Brush reiterated that he could not remember shooting Bonney. Prior to ending the recording, Layman confirmed that Brush understood he was being charged with murder.

While incarcerated in the Pacific County Jail, Brush made a telephone call to his ex-wife, which was recorded. During the brief conversation, Brush asked

---

[4] There was no testimony or other evidence detailing the nature of communications between Chief Wright and Brush or between any jail staff and Brush before Chief Wright informed Deputy Chief Layman that Brush wanted to talk again.

his ex-wife to contact his family; he also said to her three times: "I killed Lisa." VRP (11/29/11) at 24.

## Procedural History

The state charged Brush with first degree murder, and alleged as aggravating factors that (1) Brush manifested deliberate cruelty to the victim during the commission of the crime, (2) the offense involved "aggravated domestic violence,"[5] and (3) the victim's injuries substantially exceeded the level of bodily harm necessary to satisfy the elements of the offense. RCW 9.94A.535(a),(h)(i) and (iii), and (y), respectively.[6] CP at 11-13. The trial was bifurcated so jurors would not hear evidence of an ongoing pattern of abuse (in support of subsection (h)(i)) until the sentencing phase.[7] In defense against the charge, Brush claimed diminish capacity, i.e., that he had a mental illness or disorder that rendered him incapable of either premeditating or forming the intent to kill Bonney.

Prior to trial, a CrR 3.5 hearing was held to determine the admissibility of Brush's statements to police. Brush asserted that all three of his statements to

---

[5] As charged in this case, the State alleged pursuant to RCW 9.94A.535(3)(h): "The current offense involved domestic violence, as defined in RCW 10.99.020, or stalking, as defined in RCW 9A.46.110, and one or more of the following was present: (i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time;... or (iii) The offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim." CP at 225.

[6] The State also alleged a firearms aggravator under RCW 9.94A.533(3)(a) which is not disputed on appeal.

[7] Although the State did not offer evidence of domestic violence in the guilt phase, some evidence of domestic violence was elicited from the defense psychological expert, Dr. Christiane Tellefsen. Dr. Tellefsen testified about threats Brush made to Bonney, an incident in which he stalked her after a concert, an angry confrontation at Bonney's friend's house, and the generally volatile nature of their relationship.

the police should be suppressed: the first, because it was obtained in violation of Miranda, supra.; the second and third because they were tainted by the first statement, which he argued was involuntary and coerced. He also argued that the recorded statements were obtained in violation of his right to remain silent and right to counsel. The court agreed that Brush's initial confession to shooting at a human was obtained in violation of his Miranda rights and granted his motion to suppress that statement, but it found the two statements recorded at the police station admissible.

Jury selection lasted two days. A jury, including three alternate jurors, was sworn to try the case. On the third day of trial, Juror 1 informed the court that his employer had purchased him a plane ticket for a business trip to Alaska. He had received no advance notice, and the trip was expected to last a month. Juror 1 told the court that missing the trip would cost him a $4,000 business opportunity and create a financial hardship for him and his family, for which he was the primary earner. The juror also asserted that missing the trip would not impact his "ability to concentrate fully on the trial." VRP (11/28/11) at 18. The court excused the juror over Brush's objection.

During the guilt phase, Dr. Clifford Nelson, the medical examiner who conducted the autopsy of Bonney, testified regarding Bonney's injuries and the mechanics of the shooting. Over Brush's objection, Dr. Nelson described this homicide as one of the two worst he had observed in terms of being "gratuitously violent" and causing damage in excess of that necessary to kill someone. VRP (11/30/11) at 46.

At the close of evidence, Brush objected to the court's jury instructions defining the alleged aggravating factors, but he gave no specific reasons and did not propose any alternative instructions. He did not object to any of the special verdict forms. The jury found Brush guilty of first degree murder. The jury also found via special verdicts that (1) Brush and Bonney were members of the same household or family; (2) Brush was armed with a firearm when the crime was committed; (3) Brush's conduct during the commission of the crime manifested deliberate cruelty to the victim; (4) the victim's injuries exceeded the level of bodily harm necessary to satisfy the elements of the offense; and (5) the crime was an aggravated domestic violence offense based on deliberate cruelty and excessive bodily harm to the victim.

Following the verdicts, the second phase of the trial commenced in which the State presented evidence of a pattern of domestic violence between Brush and Bonney. The State offered testimony from Bonney's daughter, Elizabeth Bonney (herein, "Elizabeth"), regarding allegations Bonney had made about prior incidents of domestic violence involving Brush.[8] The trial court admitted the evidence over Brush's hearsay objection. The jury returned a sixth special verdict finding that the crime was an aggravated domestic violence offense based on an ongoing pattern of abuse over a prolonged period of time.

Brush moved for a new trial based on the trial court's dismissal of Juror 1. The trial court denied the motion. The court determined the maximum standard range sentence, including the firearms enhancement was 380 months, but

---

[8] Elizabeth also testified in the guilt phase, establishing that Bonney and Brush had a dating relationship of almost two years and that during much of this time they cohabitated.

imposed an exceptional sentence of 1,060 months based on the jury's special verdicts.

Brush appeals.

## DISCUSSION

Brush argues that his conviction should be overturned because his three statements to police were improperly admitted at trial and because the trial court violated his right to have his trial completed by a particular tribunal. Brush also claims that the aggravating factors upon which the court relied to impose the exceptional sentence are not supported by the record. We reject Brush's challenges to the guilty finding but agree that the exceptional sentence must be reversed. Accordingly, we affirm the judgment, but remand for resentencing.

I.

Brush asserts that each of his three statements to police was obtained in violation of his rights under the Fifth Amendment of the United States Constitution. He argued below, and the trial court agreed, that his initial affirmative response to the officer's question whether he was shooting at a human was inadmissible because it was the result of an interrogation which took place prior to admonishment of his constitutional rights.[9] He now contends that the initial statement was also involuntary, thereby rendering the subsequent recorded statements to police tainted and inadmissible. He further contends that his two recorded statements were obtained in violation of Miranda.

---

[9] The State does not contest this ruling on appeal.

We subject constitutional errors, including <u>Miranda</u> violations, to harmless error analysis. <u>State v. Boggs</u>, 16 Wn. App. 682, 689-90, 559 P.2d 11 (1977). To establish harmless error on appeal, the beneficiary of a constitutional error must establish beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. <u>Id.</u> (citing <u>Chapman v. California</u>, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). Courts applying this standard have held harmless the admission of statements obtained in violation of a defendant's constitutional rights where there is overwhelming independent evidence of guilt. <u>Id.</u> (citing <u>Harrington v. California</u>, 395 U.S. 250, 251, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); <u>see also</u> <u>State v. Nist</u>, 77 Wn.2d 227, 234-35, 461 P.2d 322 (1969)).

Even assuming that Brush's statements to police were obtained in violation of his Fifth Amendment rights, any error in admitting the statements was harmless beyond a reasonable doubt. The record discloses that at least five eyewitnesses identified Brush as the individual they watched shoot and kill Bonney. The jury also heard the recording of Brush's jailhouse telephone call to his ex-wife, in which he confessed to the murder three times. In addition, Brush conceded at trial that he killed Bonney, arguing only that he could not have premeditated the act or formed the intent to kill her because of a mental disease or disorder. Based on these factors, we conclude any error in admitting the challenged statements was harmless beyond a reasonable doubt.

II.

Brush next contends that the two recordings of his statements at the police station were obtained in violation of the RCW 9.73.090 (the Privacy Act) and that trial counsel's failure to object on this basis constituted ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[10]

The admission of evidence obtained in violation of the Privacy Act is not constitutional error and may be held harmless unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected. State v. Howard, 127 Wn. App. 862, 871, 113 P.3d 511 (2005); State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). The parties dispute whether Brush may raise error based on a Privacy Act violation for the first time on appeal. We need not resolve the issue, because even assuming the issue is properly before us and that the recordings were erroneously admitted in violation of the Privacy Act, the error was harmless, given the overwhelming, independent evidence of Brush's guilt. For this same reason, Brush's ineffective assistance of counsel claim fails since he cannot establish, as required by Strickland, that he was prejudiced by trial counsel's failure to object to the evidence.

---

[10] Under Strickland, a defendant claiming ineffective assistance of counsel must show that counsel was deficient and that the defendant was prejudiced by trial counsel's deficient performance. State v. Thomas, 109 Wn.2d 222, 225, 743 P.2d 816 (1987).

III.

Brush claims the trial court's dismissal of Juror 1, violated his right to be tried by a jury he helped to select. Removal of a juror is reviewed for abuse of discretion. State v. Jorden, 103 Wn. App. 221, 226, 11 P.3d 866 (2000); see also State v. Hughes, 106 Wn.2d 176, 204, 721 P.2d 902 (1986). A trial court "'necessarily abuses its discretion by denying a criminal defendant's constitutional rights.'" State v. Iniguez, 167 Wn.2d 273, 280, 217 P.3d 768 (2009) (quoting State v. Perez, 137 Wn. App. 97, 105, 151 P.3d 249 (2007)).

We conclude the trial court's dismissal of Juror 1 was not an abuse of discretion. RCW 2.36.100(1) gives the trial court authority to excuse a person from jury service "upon a showing of undue hardship, extreme inconvenience, public necessity, or any reason deemed sufficient by the court for a period of time the court deems necessary." The law "'vests...a wide discretion to be exercised in the matter of excusing persons summoned for jury service from the performance of that duty.'" (Emphasis added.) State v. Slert, 169 Wn. App. 766, 787, 282 P.3d 101 (2012) rev. granted in part, 176 Wn.2d 1031 (2013)(quoting State v. Ingels, 4 Wn.2d 676, 682–83, 104 P.2d 944 (1940); accord State v. Rice, 120 Wn.2d 549, 562, 844 P.2d 416 (1993)).

Here, on the third day of trial, before any evidence was heard, Juror 1 advised the court that his employer had purchased him a plane ticket to go to Alaska for employment purposes. He informed the court that he was the sole breadwinner for his family and that missing the Alaska trip would result in lost income of over $4,000. He stated that a delay of even a day or two would cost

10

him the opportunity entirely. The juror also forthrightly stated that missing the trip would not impact his ability to concentrate fully on the trial. The court then found that continued service on the jury "would be an undue financial hardship on this gentleman." (VRP (11/28/11) at 21-23.

Brush argues that the trial court abused its discretion because regardless of the hardship, the juror indicated he could still perform his duties as a juror. But where such service would cause the juror undue hardship, RCW 2.36.100(1) expressly permits the judge to dismiss the juror. The trial court's finding that missing the business trip would cause Juror 1 undue hardship is supported by the record. There was no abuse of discretion.[11]

IV.

Lastly, Brush claims that the trial court erred in imposing an exceptional sentence. On review of an exceptional sentence an appellate court must (1) make a factual inquiry to determine whether the record supports the jury's special verdict on the aggravating circumstance under a clearly erroneous standard; (2) conduct a de novo review to determine whether the trial court's reasons for imposing an exceptional sentence are substantial and compelling; and (3) make a determination as to whether the trial court abused its discretion by imposing a sentence that is clearly excessive or clearly too lenient under the abuse of

---

[11] Brush also argues that dismissal of Juror 1 violated his rights under the double jeopardy clause of the Fifth Amendment. He cites Crist v. Bretz, 437 U.S. 28, 35-36, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), in support. In that case, charges against the defendant were dismissed on the State's motion after the jury was empaneled and sworn, but before the first witness was sworn. The State refiled the charges and the defendant moved to dismiss on double jeopardy grounds. The issue in the case was whether jeopardy attached after the jury was empaneled and sworn, as provided by the federal constitution, or after the first witness is sworn as provided by a Montana statute. The case is inapposite since Brush does not claim, nor could he, that he was at any time subject to jeopardy a second time regarding this offense.

discretion standard. State v. Fowler, 145 Wn.2d 400, 405-06, 38 P.3d 335 (2002).

Under RCW 9.94A.535(3), a trial court has substantial and compelling reasons to impose an exceptional sentence if a jury finds any of several enumerated aggravating factors. Thus, in this case, the second prong of our analysis is satisfied because the trial court expressly based the exceptional sentence on the jury's special verdicts finding four statutory aggravating factors: deliberate cruelty under subsection (3)(a); excessive injury to the victim under subsection (3)(y); and two factors related to domestic violence under subsection (3)(h)(i) and (iii). Thus, our inquiry is limited to whether the record supports the special verdicts and, if so, whether the sentence imposed was clearly excessive.

Under subsection (3)(a), a jury may find an aggravating factor if:

> (a) The defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim.

"Deliberate cruelty" requires a showing "of gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself . . . . [T]he cruelty must go beyond that normally associated with the commission of the charged offense or inherent in the elements of the offense. . . ." State v. Tili, 148 Wn.2d 350, 369, 60 P.3d 1192 (2003) (citation omitted).

Here, the record indicates that the shooting of Bonney happened very rapidly; the entire incident was over in seconds and the actual shots occurred in rapid succession. Although the first nonlethal shot undoubtedly caused Bonney pain, there is no indication that Brush deliberately sought to inflict pain as an end

12

in itself or to prolong Bonney's suffering in any way. Indeed, the evidence is to the contrary; all of the eyewitnesses suggested that he fired the second lethal shot almost immediately after the first. Given this evidence, we conclude that the jury's special verdict finding "deliberate cruelty" is unsupported by the record and clearly erroneous.

The jury also returned special verdicts finding Brush's crime was an "aggravated domestic violence offense" under RCW 9.94A.535(3)(h)(i) and (iii). CP at 232. Subsection (3)(h)(i) authorizes the jury to find an aggravating factor if:

> (i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time;...

Brush argues that the jury's special verdict on subsection (3)(h)(i) should be vacated because the trial court's instruction on that aggravating factor—Jury Instruction 26—was an improper comment on the evidence. Specifically, he challenges that portion of the instruction emphasized below:

> An 'ongoing pattern of abuse' means multiple incidents of abuse over a prolonged period of time. <u>The term 'prolonged period of time' means more than a few weeks</u>.

SUPP. CP at 229; <u>see also</u>, 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 300.17, at 720 (3d ed. 2008).

The Washington State Constitution, article IV, section 16, provides "[j]udges shall not charge juries with respect to matter of fact, nor comment thereon, but shall declare the law." A judge impermissibly comments on the evidence when he conveys a personal attitude toward the merits of the case. <u>State v. Ratliff</u>, 121 Wn. App. 642, 646, 90 P.3d 79 (2004). An instruction

improperly comments on the evidence if the instruction resolves a disputed issue of fact that should have been left to the jury. State v. Eaker, 113 Wn. App. 111, 118, 53 P.3d 37 (2002). When a judge comments on the evidence in a jury instruction, we presume prejudice and the burden is on the State to show that the defendant was not prejudiced unless the record affirmatively show that no prejudice could have resulted. State v. Jackman, 156 Wn.2d 736, 743, 132 P.3d 136 (2006).

In State v. Becker, 132 Wn.2d 54, 64-65, 935 P.2d 13231 (1997), the conviction was reversed because the language in a special verdict form resolved a factual dispute about whether a youth program was a school. The court concluded "[b]y effectively removing a disputed issue of fact from the jury's consideration, the special verdict form relieved the State of its burden to prove all the elements of the sentence enhancement statute."

Here, the jury instruction informed the jury, as a matter of law, that more than a few weeks was a prolonged period of time. Since there was evidence presented during the trial that the alleged domestic violence lasted for more than a few weeks, the instruction resolved any factual dispute whether the domestic violence was over a prolonged period of time. Thus, the instruction relieved the State of proving this element of the aggravating factor.

The State, relying on State v. Barnett, 104 Wn. App. 191, 203, 16 P.3d 74 (2001), argues that Instruction 26 merely defined the term "prolonged period of time" and that the definition of a term is a question of law on which the jury may be properly instructed. But because Barnett was decided before Blakely v.

Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d.403 (2004), the issue of whether the abuse was over a prolonged period of time was a matter for the court to decide, and not the jury. Since Blakely, "responsibility for these determinations [has moved] to the jury as a matter of constitutional right." State v. Epefanio, 156 Wn. App. 378, 392, 234 P.3d 253 (2010). As such, whether a period of time is prolonged is an issue of fact for the jury to determine. And because Instruction 26 resolved that question for them it was a comment on the evidence and thus, error. In addition, we presume that Brush is prejudiced by this error. The State makes no argument that he was not and we are unable to affirmatively state based on the record that none occurred. Accordingly, this ground for the exceptional sentence cannot be sustained.[12]

Brush also challenges the jury's special verdict finding the domestic violence aggravating factor based on subsection (3)(h)(iii), which provides for such a finding if:

> (h) The current offense involved domestic violence, as defined in RCW 10.99.020, and
>
> ...
>
> (iii) The offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim.

This factor must be supported by evidence that the offender's conduct during the commission of the current offense manifested "deliberate cruelty" or "intimidation of the victim."

---

[12] Given our resolution of this issue we do not address Brush's argument that the testimony of Bonney's daughter in support of this aggravating factor was hearsay, improperly admitted under ER 803(a)(2), as an "excited utterance".

As previously discussed, the record in this case is insufficient to establish "deliberate cruelty." And, although the jury was properly instructed on the "intimidation of the victim" prong, the special verdict form omitted this language and substituted the "excessive bodily harm" language set forth under subsection (3)(y), discussed infra. CP at 199, 206. Under the plain language of the statute, the jury's special verdict finding an "aggravated domestic violence" offense cannot be sustained on this ground.

Subsection (3)(y) permits a jury to find an aggravating factor if:

> (y) The victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense...

Brush cites State v. Stubbs, 170 Wn.2d 117, 240 P. 3d 143 (2010), for the proposition that no injury can "substantially exceed" the level of bodily harm necessary to cause death. In Stubbs, our Supreme Court considered whether subsection (3)(y) was sustained by the evidence in a first degree assault case. Id. The issue was whether any level of injury could "substantially exceed" "great bodily harm," as defined by the criminal code RCW 9A.36.011(1)(a)(c); 9A.04.110(4)(c)). The court explained that "'[g]reat bodily harm,' ... encompasses the most serious injuries short of death. No injury can exceed this level of harm, let alone substantially exceed it" for purposes of subsection (3)(y). Id. at 128.

It stands to reason that, if no injury can substantially exceed "great bodily harm," which leaves the victim just short of death, then no injury can substantially exceed death. We conclude, therefore, that Stubbs precludes a finding of the subsection (3)(y) aggravating factor where, as here, the victim's death is an

16

element of the underlying crime. The jury's finding of the subsection (3)(y) aggravating factor was error.

The judgment of guilty is affirmed but because none of the jury's findings regarding the aggravating factors can be sustained on the record before us, the exceptional sentence in this case must be reversed. We remand for resentencing with instructions that the trial court may, if requested, impanel a jury to consider evidence of a prolonged pattern of abuse under RCW 9.94A.535(3)(h)(i). See RCW 9.94A.537(2); State v. Powell, 167 Wn.2d 672, 679-80, 223 P.3d 493 (2009), overruled on other grounds.[13]

We remand.

WE CONCUR:

---

[13] We note that the jury may not consider aggravating circumstances under subsection (3)(a) because, as a matter of law, the record cannot sustain a finding of "deliberate cruelty;" subsection (3)(h)(iii) for the same reason and because the trial court did not rely on the "intimidation of the victim" language; or subsection (3)(y), which is not applicable in homicide cases.