[No. 18219–6–I. Division One. July 29, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. TOBY V. JOHNSON, *Appellant.*

*Jay Carey* and *Carey & Burman,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *John E. Stansell, Deputy,* for respondent.

PEKELIS, J.—Toby V. Johnson appeals his juvenile conviction for second degree burglary. He contends that the trial court erred in denying his motion to suppress his confession because (1) the police officer did not adequately advise him of his *Miranda* rights; (2) the police officer initiated interrogation after Johnson invoked his right to counsel; and (3) Johnson did not voluntarily waive his *Miranda* rights. We reverse and remand.

## FACTS

Clement A. Gardner reported to the police that sometime between November 27 and 28, 1985, he discovered that two chain saws were missing from his garage. Detective Sigman of the Marysville Police Department was assigned to the case. He obtained a written statement from Toby Johnson, a juvenile, admitting that he took the saws. Johnson moved to suppress his statement based on *Miranda* violations.

Detective Sigman testified that in early January 1986, the Snohomish County Sheriff referred Johnson to him for questioning. Detective Sigman testified that he read Johnson his *Miranda* rights and that Johnson then requested an attorney. Detective Sigman terminated his interrogation and arranged for Johnson to speak by telephone with public defender Al Lyon. After Johnson's conversation with Mr. Lyon, Detective Sigman testified that the following occurred:

> [Johnson] had talked with a public defender Lyon and at that time I advised [Johnson] that he didn't have to talk to me, and in fact had been advised by his attorney not to talk to me, but that if he did say anything, it could and would be used against him in a court—criminal prosecution—juvenile court or adult if the juvenile court declined jurisdiction. Toby at that time advised that he had been involved in the theft of some chainsaws [*sic*] in the area and gave me an accounting of the chainsaw [*sic*] thefts that he had been involved in.

Detective Sigman also testified that he wrote Johnson's confession at Johnson's request, that both of them edited the statement as they went along, and that Johnson then signed the statement. The *Miranda* form and Johnson's confession showed that 2 hours elapsed between the time Johnson received the *Miranda* warnings and the time he finished his confession.

Johnson testified and denied that he had been given any *Miranda* warnings on this occasion. Johnson denied that the statement was accurate or that he had reviewed the statement prior to signing it because Detective Sigman told him "'[t]he quicker you sign, the quicker you get out.'" He also recalled that prior to his confession, Detective Sigman promised him that he would not be prosecuted for any burglaries. In rebuttal, Detective Sigman agreed that he promised not to prosecute Johnson, but said that this promise extended only to City of Marysville cases. He added that he specifically advised Johnson that he had no control over the decision to prosecute Snohomish County charges. Detective Sigman did admit that he was surprised when he was subpoenaed to testify and expressed some confusion that the crime charged was indeed a county charge.

The State's only other witness was Mr. Gardner who testified that someone broke into one of the buildings on his property and took two chain saws without his permission.

Johnson testified in his own behalf and essentially stated that he had purchased the chain saws for $10, unaware they were stolen. Johnson finally admitted that he suspected that they might have been stolen.

The trial court admitted Johnson's confession, finding first that Johnson was properly advised of his *Miranda* rights. The court also found that the evidence that Johnson was interrogated for 2 hours did not by itself demonstrate "improper influence," and that Detective Sigman's efforts to hurry the process did not "amount to coercion". The court concluded that Johnson did not make his confession under duress and that Detective Sigman did not act

improperly. Johnson was found guilty of second degree burglary. He brings this appeal challenging the trial court's denial of his motion to suppress.

ANALYSIS

I. Did Detective Sigman properly advise Johnson of his *Miranda* rights?

Custodial interrogation must be preceded by advice to the accused that he has the right to remain silent, the right to counsel, and that anything he says can and will be used against him. *State v. Robtoy*, 98 Wn.2d 30, 35, 653 P.2d 284 (1982) (citing *Miranda v. Arizona*, 384 U.S. 436, 479, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966)).

This court must determine whether substantial evidence supports the trial court's conclusion that Detective Sigman properly advised Johnson of his *Miranda* rights. *State v. Jones*, 95 Wn.2d 616, 626–27, 628 P.2d 472 (1981). Here, Detective Sigman testified that he read Johnson his rights and that Johnson acknowledged his understanding by initialing each paragraph of the *Miranda* form. Johnson, on the other hand, denied that Detective Sigman advised him of his *Miranda* rights; however, the trial court in its oral ruling resolved this credibility issue against Johnson. Detective Sigman's testimony provides substantial evidence to support the trial court's conclusion that Sigman properly advised Johnson of his *Miranda* rights.

II. Did Sigman initiate interrogation of Johnson after he invoked his right to counsel in violation of *Miranda*?

 After a suspect has been advised of his *Miranda* rights,

> [i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney *and to have him present during any subsequent questioning.*

(Italics ours.) *Miranda v. Arizona*, 384 U.S. at 474; *see also State v. Robtoy*, 98 Wn.2d at 35 (if suspect requests attor-

ney, interrogation must cease until attorney is present). Furthermore, an accused who asserts his right to counsel during custodial interrogation is not subject to further interrogation without counsel "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 485, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). Interrogation is

> either express questioning or its functional equivalent . . . [that is,] any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

(Footnotes omitted.) *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980); *see also State v. Pierce*, 94 Wn.2d 345, 352, 618 P.2d 62 (1980) (adopting the definition of interrogation established in *Rhode Island v. Innis*).

The State poses the following scenario: After Detective Sigman read Johnson his *Miranda* rights, Johnson requested an attorney. Johnson spoke with his attorney, Detective Sigman readvised Johnson of his *Miranda* rights, and then Johnson confessed. It is clear that the mere readvisement of his *Miranda* rights would not constitute "interrogation" because it was neither express questioning nor its functional equivalent. *Rhode Island v. Innis*, 446 U.S. at 300–01. It is unclear, however, what occurred between the time Detective Sigman readvised Johnson of his *Miranda* rights and the time Johnson confessed. The State concedes that at some point Detective Sigman promised not to prosecute Johnson if Johnson "talked" to Detective Sigman, but it fails to explain *when* Detective Sigman made this promise not to prosecute. Whether or not the detective's promise extended only to city charges, his promise constituted interrogation if it came after Johnson asked to speak to counsel. Sigman should have known that this type of promise was reasonably likely to elicit an

incriminating response from Johnson.

The trial court did not attempt to resolve this question in its oral ruling, and did not enter written findings of fact and conclusions of law as required by CrR 3.5(c). In some instances, it is appropriate to remand the case to the trial court for entry of findings of fact and conclusions of law. *See, e.g., State v. Gross,* 23 Wn. App. 319, 323, 597 P.2d 894 (1979). In this case, however, a remand would be pointless. The trial court could not enter findings on the critical question presented, that is, whether Detective Sigman's promise preceded Johnson's request for counsel. The record is simply incapable of yielding such a determination.[1]

In conclusion, the State admits it made a promise designed to obtain a confession, but fails to place the promise in the context of a 2–hour interrogation during which the defendant invoked his right to counsel. The State is therefore unable to meet its heavy burden of establishing that it refrained from interrogating Johnson after he invoked his right to counsel. *See Robtoy,* 98 Wn.2d at 37. We hold that Johnson's confession is inadmissible and remand for further proceedings consistent with this opinion.

Reversed and remanded.

RINGOLD, J., concurs.

SCHOLFIELD, C.J. (dissenting)—The majority opinion acknowledges that Johnson was properly advised of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), and that questioning of him by the detective ceased when he requested an attorney. It is undisputed that pur-

---

[1]The inference, if any, to be drawn from the scant record is that Detective Sigman made his promise to Johnson after Johnson invoked his right to counsel, not before. It is unlikely that after their deal was struck, Johnson asked to speak to counsel, and then confessed. This scenario is particularly unlikely when the evidence is undisputed that Johnson's attorney advised him to remain silent.

suant to his request, arrangements were made for Johnson to speak with an attorney—a public defender—on the telephone. It was after his conversation with the attorney that Johnson made incriminating statements which were admitted against him.

The majority holds Johnson's confession inadmissible because the record is unclear as to whether a promise of leniency was made before or after Johnson requested counsel. The majority reasons that the police are prohibited from making a promise of leniency after the defendant is provided the assistance of counsel because this would amount to interrogation.

I must respectfully dissent because of my view that *Miranda v. Arizona, supra,* does not prohibit custodial interrogation of a defendant *after* he has been fully advised of his constitutional rights and has been provided the assistance of counsel.

The United States Supreme Court has said more than once that custodial interrogation of the defendant must cease *until* assistance of an attorney has been provided. If he requests counsel, "the interrogation must cease until an attorney is present." *Miranda,* at 474.

> We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona,* 451 U.S. 477, 484–85, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981).

In *Rhode Island v. Innis,* 446 U.S. 291, 298, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980), the Court referred to the "undisputed right" under *Miranda* to remain silent and to be free of interrogation "until he had consulted with a lawyer." (Footnote omitted.)

The majority cites no cases from the United States Supreme Court or the Supreme Court of Washington holding that a police officer cannot interrogate a defendant after

he has been fully advised of his *Miranda* rights and has been provided with the assistance of counsel. *Miranda* refers to counsel being "present," but there is nothing in *Miranda* or in any Supreme Court cases following *Miranda* holding that being provided with the assistance of counsel over the telephone does not meet the requirement of the "presence" of counsel, in the context in which it is used in *Miranda.*

After counsel had been provided, the only issue is whether the confession was voluntary. While the trial court did not enter written findings of fact and conclusions of law as required by CrR 3.5, the trial judge did specifically discuss the subject of coercion in his decision and specifically found on the record that no coercion or improper influence was asserted against Johnson prior to or during the confession, which was reduced to writing and signed by Johnson. Based upon this discussion by the trial judge in his decision, it is obvious that had a finding expressed in terms of voluntariness been entered, the court would have found the confession voluntary.

Under these circumstances, the confession should not be suppressed. It was given after proper advisement of rights pursuant to *Miranda* and assistance of counsel had been provided. The judgment should be affirmed.